Filed 8/29/13

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,        )
       )
       Plaintiff and Respondent,      )
       )          S182621
       v.      )
       )          Ct.App. 5 F057384
LEWIS MARCUS DOWL,      )
       )          Kern County
       Defendant and Appellant.      )    Super. Ct. No. BF125801A
_____ )

The Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5)[1] and the Medical Marijuana Program (MMP; § 11362.7 et seq.) authorize use of marijuana for medical purposes under certain circumstances. We granted review in this case to consider issues relating to expert testimony when a criminal defendant defends against a charge of possession of marijuana for purposes of sale by introducing evidence that, under these statutes, he legally possessed the marijuana for medical purposes. Defendant Lewis Marcus Dowl, who asserted such a defense, contends the evidence at trial was insufficient to establish his intent to sell because the expert who opined at trial on that subject lacked experience distinguishing between lawful possession for medical use and unlawful possession for purposes of sale. Insofar as defendant argues the expert's

---

[1]      All further unlabeled statutory references are to the Health and Safety Code.

1

opinion was inadmissible or insufficient because the witness was unqualified, we find that defendant forfeited the argument by failing to object at trial to the witness's qualifications. Insofar as defendant otherwise contends the evidence is insufficient to sustain his conviction, we disagree. We therefore affirm the judgment.

## I. Facts

On Saturday, November 29, 2008, a little after 4:00 p.m., two police officers stopped defendant for playing loud music in his car. Defendant presented his driver's license and a medical marijuana identification (ID) card with an expiration date of August 21, 2009, and said there was marijuana in the car. A search revealed $21 in cash, a WD-40 can with a hidden compartment containing marijuana residue, and a total of over two ounces of marijuana: 17.2 grams in a single bag in defendant's pocket, three grams in each of 10 bags in the driver's door, and 6.5 grams in each of three bags on the backseat. Defendant did not exhibit signs of being under the influence of marijuana and possessed nothing that would be used for ingesting marijuana, such as pipes or rolling papers. His belt buckle read, "CA$H ONLY." Based on these circumstances, an information charged defendant with unlawful transportation of marijuana in violation of section 11360, subdivision (a), and unlawful possession of marijuana for purposes of sale in violation of section 11359.

At trial, Officer Jason Williamson, who was one of the arresting officers, testified that in his expert opinion, defendant possessed the marijuana for sale. He based his opinion on (1) the packaging and location of the marijuana found in the door and on the backseat, (2) defendant's "CA$H ONLY" belt buckle, viewed in conjunction with the absence of "pay-and-owe" sheets or any written record of sales transactions, and (3) the fact that defendant was on probation for a prior conviction for possession of marijuana for sale. Regarding the first circumstance,

2

the officer explained:  "We have 10 bags all almost exactly three grams in the driver's map compartment of the vehicle.  These bags typically sell for about $5.00 a piece.  The price could go up to [$]10 if it's extremely good marijuana. We have three bags which are approximately 6.5 grams each in the backseat, again packaged with the same materials but double the value of the ones in the door. And the ones of equal size were kept in different places that I know through my training and experience to be for quick reference."  Drug dealers "know" the areas where people go to buy drugs, and "they can drive up to that area and give what they call curb service.  People walk up to the door of their car."  Regarding the belt buckle, the officer testified that "CA$H ONLY" "[l]et[] people know if they want marijuana they got to come out with the cash, he's not going to front it to them or take an IOU.  It's also significant in the fact that it shows his mind-set regarding the sales of narcotics and the reason why I did not find a pay-and-owe sheet or a written recordation of sales transactions because he is not giving anyone credit."  Officer Williamson also testified that, given the totality of the circumstances, defendant's possession of a medical marijuana ID card did not affect his opinion.  He also testified that he had been a police officer for nine years, had received training in identifying marijuana possessed for personal use and marijuana possessed for sale, and had received no training in determining the validity of a medical marijuana ID card.

In his defense, defendant claimed he possessed the marijuana, not unlawfully for purposes of sale, but lawfully for purposes of medical treatment.  According to the evidence he offered at trial, including his own testimony, he obtained a prescription for marijuana from his doctor to help with chronic pain and insomnia related to a 2007 shoulder injury.  He obtained a medical marijuana ID card from the Kern County Health Department in Bakersfield in July 2008, and it was valid at the time of his arrest.  He smoked marijuana in cigars and was carrying a cigar

3

"splitter" on his keychain at the time of his arrest. He purchased the marijuana at a medical marijuana dispensary in Los Angeles, but could not recall the dispensary's name. The marijuana came packaged in a single bag. He divided it into separate bags, based on the amount he smoked on a daily basis and because small bags are easier to carry. A small bag would fit into the secret compartment of the WD-40 can found in his car upon his arrest, which was where he stored his marijuana at work. There were many bags in the door and on the backseat because he had been in a rush and had thrown them into the car. He denied selling marijuana, but admitted having previously been convicted of possession of marijuana for sale.

The jury convicted defendant of both unlawful transportation and possession of marijuana. The court sentenced him to three years in prison.

On appeal, defendant argued in relevant part that his convictions should be reversed because the evidence at trial was insufficient to establish he possessed the marijuana for purposes of sale. Officer Williamson's opinion testimony was not evidence of this fact, defendant asserted, because he needed, but lacked, experience in differentiating those who possess marijuana lawfully for medical purposes from those who possess it unlawfully with the intent to sell.

Defendant relied on two cases: *People v. Hunt* (1971) 4 Cal.3d 231 (*Hunt*) and *People v. Chakos* (2007) 158 Cal.App.4th 357 (*Chakos*). In *Hunt*, a jury convicted the defendant of unlawful possession for sale of a restricted dangerous drug, methedrine. On appeal, we reversed that conviction for two reasons: (1) nondisclosure of an informer's name; and (2) insufficient evidence. (*Hunt*, *supra*, 4 Cal.3d at pp. 237-241.) Regarding the latter ground, we reasoned that, "in the circumstances of this case," a police officer's testimony that the defendant possessed methedrine for sale was not "substantial evidence to support the conviction." (*Id*. at p. 237.) We explained: "In cases involving possession of

4

marijuana and heroin, it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale based upon matters such as quantity, packaging, and the normal use of an individual. On the basis of such testimony convictions of possession for purposes of sale have been upheld. [Citations.] [¶] A different situation is presented where an officer testifies that in his opinion a drug, which can and has been lawfully purchased by prescription, is being held unlawfully for purposes of sale. In the heroin and marijuana situations, the officer experienced in the narcotics field is experienced with the habits of both those who possess for their own use and those who possess for sale because both groups are engaged in unlawful conduct. As to drugs, which may be purchased by prescription, the officer may have experience with regard to unlawful sales but there is no reason to believe that he will have any substantial experience with the numerous citizens who lawfully purchase the drugs for their own use as medicine for illness. [¶] In the absence of evidence of some circumstances not to be expected in connection with a patient lawfully using the drugs as medicine, an officer's opinion that possession of lawfully prescribed drugs is for purposes of sale is worthy of little or no weight and should not constitute substantial evidence sufficient to sustain the conviction. No such special circumstances were shown here as to the methedrine in the blue and white travel case." (*Id*. at pp. 237-238.)

In *Chakos*, the Court of Appeal held that, under *Hunt*, when a defendant offers evidence he lawfully possessed marijuana for medical purposes, a police officer's opinion testimony that the defendant possessed the marijuana for sale does not constitute substantial evidence to convict unless the officer has "expertise in distinguishing lawful patterns of possession from unlawful patterns of holding for sale." (*Chakos*, *supra*, 158 Cal.App.4th at p. 367.) The court found that the testifying officer in *Chakos* "was unqualified to render an *expert* opinion" because

5

"[t]he record fail[ed] to show" he was "any more familiar than the average layperson or the members of this court with the patterns of lawful possession for medicinal use that would allow him to differentiate them from unlawful possession for sale." (*Id.* at pp. 368-369, some italics omitted.)

In opposing defendant's appeal, the People argued they had qualified Officer Williamson at trial as an expert on possession of marijuana for sale, and cited his trial testimony that he had specific training in the difference between possession of marijuana for personal use and possession for sale.

The Court of Appeal rejected defendant's argument and affirmed his convictions, finding that *Chakos* had erred in applying *Hunt*. The court held that Officer Williamson "was not required to additionally qualify as a medical marijuana expert in order to render a valid opinion that the marijuana found in defendant's possession was possessed for sales." *Hunt* is distinguishable, the court reasoned, because the CUA, unlike the statute at issue in *Hunt*, "provides an *affirmative defense*." *Chakos*, the court further reasoned, is "inconsistent with the nature" of that "affirmative defense"; it "improperly reallocates" to the prosecution the burden of proof on the CUA defense by "requiring the prosecution's narcotics expert to also qualify as a medical marijuana expert in order to opine that marijuana in a defendant's possession is possessed for sales." The court thus held that "a police officer need not qualify as a medical marijuana expert in order to render an opinion that marijuana being possessed is possessed for sales in cases where the defendant raises an affirmative defense under" the CUA. It found that "the presence of the marijuana in defendant's car, combined with Officer Williamson's expert opinion that the circumstances of defendant's possession were consistent with unlawful sales, constituted substantial evidence supporting defendant's convictions for transporting and possessing marijuana for sales."

6

We granted defendant's petition for review and requested briefing on several additional issues, including the effect on this appeal of defendant's failure to object at trial to Officer Williamson's qualifications to render an opinion on defendant's intent to sell the marijuana.

## II. Discussion

California's statutes specify that, except as authorized or provided by law, it is a crime to possess marijuana (§ 11357), to cultivate, harvest, dry, or process it (§ 11358), to possess it for sale (§ 11359), to transport, import, sell, administer, or furnish it (§ 11360), or to give it away (*id.*).

California's statutes also contain several medical-related exceptions to this criminal liability. The CUA, which California voters adopted in 1996, provides that the laws prohibiting possession and cultivation of marijuana — sections 11357 and 11358, respectively — "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) This statute "provides an affirmative defense to the crimes" sections 11357 and 11358 define: possessing and cultivating marijuana. (*People v. Wright* (2006) 40 Cal.4th 81, 84 (*Wright*).) A defendant may invoke it by introducing at trial evidence that raises a reasonable doubt as to the facts underlying the CUA defense. (*People v. Mower* (2002) 28 Cal.4th 457, 464, 479-483.)

"Almost immediately after the CUA became effective, questions arose about whether it provided a defense to marijuana-related offenses" other than the two "specified in its text": possession of marijuana under section 11357 and cultivating marijuana under section 11358. (*Wright*, *supra*, 40 Cal.4th at p. 90.) For example, a split of published authority developed as to whether the CUA

7

established a defense to one of the crimes of which defendant was convicted here: transporting marijuana (§ 11360). (*Wright*, *supra*, at pp. 90-92.)

In 2003, to settle this question, and others surrounding the CUA, the Legislature enacted the MMP (§ 11362.7 et seq.). (See *Wright*, *supra*, 40 Cal.4th at p. 92.) Under that program, those who provide documentation from an "attending physician" that they have "been diagnosed with [certain] serious medical condition[s] and that the medical use of marijuana is appropriate" (§ 11362.715, subd. (a)(2)) may obtain an "identification card that identifies" them as "a person authorized to engage in the medical use of marijuana" (§ 11362.71, subd. (d)(3)). The MMP further specifies that a person who (1) "transports or processes marijuana for his or her own personal medical use" (§ 11362.765, subd. (b)(1)) and (2) either has an identification card or does not have one but is "entitled to" the CUA's "protections" (see § 11362.7, subd. (f) [defining "qualified patient"]), "shall not be subject, on that sole basis, to criminal liability under Section 11357 [possession of marijuana], 11358 [cultivation of marijuana], 11359 [possession for sale], 11360 [transportation], 11366 [maintaining a place for the sale, giving away, or use of marijuana], 11366.5 [making available premises for the manufacture, storage or distribution of controlled substances], or 11570 [abatement of nuisance created by premises used for manufacture, storage or distribution of controlled substance]." (§ 11362.765, subd. (a).)

As noted above, defendant argued at trial that he possessed the marijuana not for purposes of sale, but for legally authorized medical use. On appeal, he argues that, because the evidence he introduced at trial raised a reasonable doubt as to his lawful medical use claim, the prosecution had to call a witness with "expertise in distinguishing unlawful possession . . . from lawful possession" for medical purposes, "if there would not be substantial evidence to support conviction without such an expert." Here, defendant continues, we must reverse

8

his conviction because Officer Williamson, who testified regarding defendant's intent, lacked the expertise to distinguish between lawful and unlawful possession, and "there was no other substantial evidence to support a conviction." "[B]ecause he had insufficient expertise regarding lawful possession for medical use," his opinion cannot "constitute substantial evidence" of intent to sell.

The precise legal basis of defendant's attack on the sufficiency of the officer's opinion testimony is somewhat unclear. At several points in his opening brief, he argued that, because of the officer's lack of expertise, the testimony lacked "adequate foundation." Later, in his reply brief, he argued that the problem is one of "admissibility"; the testimony, he asserts, "cannot go to the weight of evidence on the possession for sales issue" because it "is not based on sufficient knowledge so as to meet the threshold standard of admissibility." After we requested supplemental briefing on the consequences of his failure to object at trial to the officer's qualifications, defendant asserted that the problem is not one of "admissibility" but simply of insufficient evidence. Regardless of its admissibility, he argued, the testimony cannot constitute substantial evidence because the record fails to show the officer had adequate experience with lawful possession of marijuana for medical purposes.

Insofar as defendant argues the evidence failed to meet the test of admissibility, his failure at trial to object on this ground precludes him from asserting it on appeal. We have long and repeatedly held that a defendant who fails at trial to object that a witness lacks the qualifications to render an expert opinion may not on appeal contest the opinion's admissibility. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 948; *People v. Panah* (2005) 35 Cal.4th 395 , 477-478; *People v. Farnam* (2002) 28 Cal.4th 107, 161-162; *People v. Bolin* (1998) 18 Cal.4th 297, 321.) This rule helps the trial court "take steps to prevent error from infecting the remainder of the trial" and to develop an adequate record.

9

(*People v. Williams* (2008) 43 Cal.4th 584, 624.)  "Equally important," it "afford[s] the prosecution the opportunity to . . . provide additional foundation for the admission of evidence . . . ."  (*Ibid.*)  It thus ensures that the party offering the evidence has an opportunity to address any objection and " 'prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' "  (*Ibid.*)

The reasons for the forfeiture rule fully apply on the record here. Defendant argues that, during his trial testimony, Officer Williamson did not describe any specific training regarding lawful possession of marijuana for medical purposes.  However, the record shows that Officer Williamson was never asked about such training at trial.  It also shows that, on cross-examination at the preliminary hearing, *defense counsel* elicited testimony from the officer regarding his training in this area.  On this subject, Officer Williamson testified at the preliminary hearing as follows:  (1) he had received "in-field training on people possessing marijuana for medical use"; (2) he had "seen marijuana purchased from a dispensary and it was most often put in like prescription bottles with a label on it and so forth"; (3) he had received training or experience in how marijuana is packaged when sold for medical use and had "[run] into people who actually purchased from a dispensary that had marijuana packaged in that fashion with labels that said what it was, where it was from, who it was for"; and (4) he understood that those possessing a medical marijuana ID card use "about a gram or less" each time they use it.  This testimony at the *preliminary hearing* suggests that defendant's later failure *at trial* to object to Officer's Williamson's qualifications may have been "part of a tactical strategy on his part to avoid" further testimony regarding the officer's expertise, either to avoid enhancing the officer's credibility or as part of a "gamble" that some error regarding the testimony's admission would "provide grounds for reversal."  (*People v. Coleman*

10

(1988) 46 Cal.3d 749, 778, 777.) Because a party offering expert testimony need not establish the witness's qualifications absent an objection (Evid. Code, § 720; *People v. Hogan* (1982) 31 Cal.3d 815, 852), defendant's failure to object at trial eliminated the incentive of the prosecution "to provide additional testimony to lay a foundation for [Officer Williamson's] testimony" (*People v. Coleman*, *supra*, 46 Cal.3d at p. 778) and of the trial court to "take steps to prevent error from infecting the remainder of the trial" and to develop an adequate record. (*People v. Williams*, *supra*, 43 Cal.4th at p. 624.) He therefore cannot now challenge on appeal the testimony's admissibility based on the officer's qualifications. [2]

It follows from this conclusion, and from other basic principles of California law, that defendant also may not now obtain reversal by having a reviewing court declare on appeal, as a matter of substantial evidence review, that Officer Williamson was unqualified to render an opinion at trial regarding defendant's intent to sell. If there is an objection at trial to a proffered expert's qualifications, the determination of whether the witness is qualified to testify as an expert is a question *for the trial court*, not the jury. (*People v. Davis* (1965) 62 Cal.2d 791, 800; *Huffman v. Lindquist* (1951) 37 Cal.2d 465, 476.) A trial court's

---

[2]     At the preliminary hearing, after Officer Williamson opined that defendant possessed the marijuana for purposes of sale, defendant's counsel stated: "Objection, lack of foundation." Even were this objection sufficient to constitute a challenge to the officer's expertise (compare *People v. Roberts* (1992) 2 Cal.4th 271, 298 [defendant who made "lack of foundation" objection to expert testimony "never sought to challenge the witnesses' qualifications as experts"] with *Lemley v. Doak Gas Engine Co.* (1919) 40 Cal.App. 146, 154-155 [Supreme Court opinion on denial of petition for hearing stating that lack of foundation objection "fairly presented the question of the sufficiency of the evidence as to the expert qualifications of the witness"]), defendant's failure to reassert the objection at trial forfeited the issue for appeal. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1139.)

determination that a witness is qualified to testify "is binding on" the jury, although jurors may consider any evidence of the witness's qualifications in determining the weight to give the testimony. (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) § 720 , p. 316; see also *Bossert v. Southern Pacific Co.* (1916) 172 Cal. 504, 506; *Fairbank v. Hughson* (1881) 58 Cal. 314, 315.) While an appellate court may review the trial court's decision, it may reverse only for an abuse of discretion, and must uphold the ruling unless " ' "the evidence shows that a witness *clearly lacks* qualification as an expert . . . ." ' " (*People v. Chavez* 1985) 39 Cal.3d 823, 828.) In light of these principles, defendant, by failing to object, has forfeited appellate review of whether the evidence is sufficient to establish that Officer Williamson was qualified to testify as an expert that defendant possessed the marijuana for purposes of sale.[3]

Nevertheless, despite his failure to object, defendant may argue on appeal that the evidence put before the jury at trial — including the officer's opinion testimony — was insufficient to establish he possessed the marijuana for purposes of sale. (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 ["contention that a judgment is not supported by substantial evidence" is an "exception" to the rule that "points not urged in the trial court cannot be raised on appeal"].)

---

[3]     Contrary to the assertion in the concurring opinion, we do not hold that defendant has forfeited his claim that the officer's lack of expertise "rendered his opinion insufficient 'as a matter of substantial evidence.' " (Conc. opn. of Werdegar, J., *post*, at p. 2.) Rather, we hold that defendant has forfeited any claim that the officer was unqualified to testify as an expert that defendant possessed the marijuana for purposes of sale, even if presented as a substantial evidence argument. As our subsequent discussion demonstrates, defendant remains free to argue on appeal about the weight to which that testimony was entitled.

However, having reviewed the record, we reject defendant's argument. We begin by reiterating that the jury heard not only Officer Williamson's opinion regarding defendant's intent, but also the officer's testimony regarding the various circumstances that, in his experience, were consistent with that conclusion. Notably, although contesting the officer's ultimate opinion regarding defendant's intent, defendant does not challenge the officer's expertise in identifying for the jury circumstances that are generally consistent with an intent to sell. On the contrary, defendant concedes that the officer "had significant experience and training in distinguishing between marijuana possessed for personal use and possession [of] marijuana for sale," such that he could identify "different factors that would be considered when somebody is running a sales operation as opposed to just using it for personal enjoyment." Indeed, consistent with the officer's testimony regarding the circumstances on which he based his opinion, defendant concedes that the "factors" that "typically" or "normally indicate sales" of marijuana include "large quantity," "baggies," and "the number of packages found containing marijuana."

Defendant's concessions are understandable given the evidence at trial. Regarding Officer Williamson's expertise, the jury heard the following testimony: (1) before his hiring in March 1999 as a reserve police officer, Officer Williamson "attended a year and a half long reserve police academy, the extended version, . . . where [he] received several hours of training in drug recognition, people possessing drugs for personal use, people possessing drugs for the purpose of sales, signs and symptoms of people being under the influence of various drugs, paraphernalia associated with ingesting various drugs, and in each one of those categories to some extent with marijuana"; (2) after his March 1999 hiring, he entered "a field training program . . . with a senior police officer where [he] ran into many people in the street that were in possession of marijuana; in possession

13

of rolling papers, pipes, various items used for ingesting marijuana; people possessing marijuana for the purpose of sales, and either handled those investigations or was present while other officers handled those investigations"; (3) after being hired full-time in August 1999, he was "put back through a full-time police academy at the Bakersfield Police Department Law Enforcement Training Center where [he] received more hours of instruction on drug recognition, people possessing drugs for personal use, people possessing drugs for the purpose of sales, paraphernalia associated with the ingestion of various drugs, and in each one of those areas dealt to some extent with marijuana"; (4) after graduating from that program in December 1999, he "entered into a full-time field training program . . . with three different senior police officers, where [he] saw many more people in possession of marijuana, people possessing marijuana for personal use, and people possessing marijuana for the purposes of sales": (5) since then, he had "made many, many arrests of people in possession of marijuana, several arrests for people possessing marijuana for the purpose of sales"; and (6) he received training in the difference between possession of marijuana for personal use and possession of marijuana for the purposes of sale, which "consisted of different factors that would be taken into consideration when somebody is running a sales operation as opposed to just using it for personal enjoyment, to include amount, packaging, how marijuana is typically distributed on the street, the average prices that marijuana goes for, how to tell slight differences in quality of marijuana by looking at it and smelling it."

Regarding the circumstances supporting the officer's opinion, as noted above, the jury heard evidence that police found 10 bags, each containing three grams of marijuana, in the driver's door of defendant's car and three bags, each containing "approximately 6.5 grams" of marijuana, on the backseat, "packaged with the same materials" as the bags in the door. Officer Williamson testified that

14

bags of the size found in the door "typically sell for about $5.00 a piece," and could sell for as much as $10 if they contain "extremely good marijuana." Bags of the size found on the backseat sell for "double the value of" the three-gram bags found "in the door." Based on his training and experience, the officer also explained that bags "of equal size [are] kept in different places . . . for quick reference." Drug dealers "know" the areas where people go to buy drugs, and "they can drive up to that area and give what they call curb service. People walk up to the door of their car." Notably, defendant testified that he himself had taken all of the marijuana out of one bag, packaged it in the bags the police found — deciding both the number of bags and the amount to put in each — and placed the bags at various places in the car. Defendant was wearing a belt buckle that read "CA$H ONLY," which the officer testified both suggested that defendant intended to sell the marijuana and explained why there was no written record of sales transactions. According to Officer Williamson, the belt buckle "[l]et[] people know if they want marijuana they got to come out with the cash, he's not going to front it to them or take an IOU." Defendant possessed no paraphernalia associated with personal use of marijuana and showed no signs of having used it. He had a prior conviction for possession of marijuana for purposes of sale. Officer Williamson testified that he based his opinion regarding defendant's intent to sell the marijuana on all of these circumstances.

In addition, evidence before the jury regarding defendant's financial circumstances further supported the officer's opinion. From May 2007 until his arrest in November 2008, defendant's wages as a part-time baby-sitter — roughly $100 to $300 per month — were his only income. In terms of expenses, defendant testified he paid about $1,500 for his car; paid for his gas and his food; paid his mother over $100 a month for rent; "help[ed] from time to time" with his mother's electric bill; paid for his own marijuana, which he had been using daily for about

15

10 years, since age 15; and paid $200 for the marijuana he possessed when the police arrested him. The prosecution highlighted this testimony during closing argument, commenting: "You heard testimony that the defendant makes anywhere from $100 to $300 a month baby-sitting and that that's his only form of income. You also heard that he pays $100 a month in rent to his mom. He takes care of his own food. He takes care of putting gas in his car and maintaining the vehicle. He also told you he spent $200 purchasing the marijuana. There's the $300 bucks. So where is he getting the rest of the money that he needs to make it through the month? By selling marijuana."

To be sure, defendant offered explanations for some of these circumstances, but the jurors did not have to believe them. Indeed, based on the evidence before them, there were valid reasons not to. For example, defendant testified he pleaded guilty in 2007 to possession of marijuana for purposes of sale only because he had been threatened, but he refused at trial to identify the persons who purportedly threatened him and he testified he had never told anyone about the supposed threat. He testified he purchased the marijuana at a dispensary in Los Angeles, but he could not remember the dispensary's name. He testified he "just threw" the bags into the car because he "was in a rush," but did not explain where he was going, why he was in a rush, or how 13 hurriedly thrown bags ended up neatly segregated in two places based on the amount of marijuana they contained, with 10 bags, each containing an amount that sells for $5, within easy reach in the driver's door, and three bags on the backseat, each containing an amount having double that value. He testified he was using the marijuana for an injury he sustained in May 2007, but he did not obtain his medical marijuana ID card until July 2008, after his October 2007 possession for sale conviction.

On this record, the evidence before the jury was not insufficient regarding defendant's intent to sell merely because none of it specifically referenced Officer

16

Williamson's experience with the legal use of marijuana for medical purposes. Notably, defendant never asserted otherwise at trial; he never made an issue of the officer's expertise or argued to the jurors that they should disbelieve the officer's testimony because the evidence failed to show he had any experience with the legal use of marijuana for medical purposes. On the contrary, during closing argument, defendant *emphasized* the officer's expertise, arguing that, because of his law enforcement experience, he had assumed from the circumstances before him — a "young Black man" playing "his radio real loud" and "packaged" marijuana — that defendant intended to sell the marijuana, and had discounted all indications inconsistent with that assumption.

The facts supporting the officer's opinion, as detailed above, distinguish this case from *Hunt*, *supra*, 4 Cal.3d 231. There, in reversing a conviction for unlawful possession for sale of methedrine, this court found that none of the circumstances on which the testifying officer based his opinion regarding the defendant's intent to sell — " 'the quantity involved, the over-all street value, [and] the normal use by an individual' " — supported that conclusion. (*Id.* at p. 238.) Our opinion explained: "Under [the officer's] own testimony, the use by an individual could be up to 8 ccs. a day. The quantity [the defendant possessed] was less than 120 ccs. and could have been as little as a two-week supply. The street value seems immaterial. The fact that medicine purchased lawfully at reasonable prices may demand a much greater price in the illegal market furnishes no reason to suppose that a possession of a two-week supply of the drug pursuant to prescription is held for profit rather than use." (*Ibid.*) By contrast, as explained above, the circumstances surrounding defendant's possession did "furnish[]" (*ibid.*) valid reasons for the officer's opinion. For this reason, defendant's reliance on *Hunt* is unavailing.

17

Also unavailing is his reliance on *Chakos*, *supra*, 158 Cal.App.4th 357. As noted above, in finding insufficient evidence, the court there reasoned that, under *Hunt*, the testifying officer was "*unqualified* to render an *expert* opinion" regarding the defendant's intent (*id*. at p. 369, first italics added) because the record showed he "had only the most tenuous knowledge of the patterns of *lawful* possession of marijuana under state law" (*id*. at p. 359). However, *Hunt* nowhere states that the officer who testified in that case was unqualified to render an opinion. It held that, because the record offered no "reason to believe" the testifying officer had "any substantial experience with the numerous citizens who lawfully purchase [methedrine] for their own use as medicine for illness," his opinion that the defendant possessed that drug for purposes of sale was, combined with the factual circumstances of that possession, insufficient evidence of the defendant's intent. (*Hunt*, *supra*, 4 Cal.3d at pp. 237-238.) Moreover, the *Chakos* court, having reviewed the record for substantial evidence, was not convinced that the circumstances surrounding the defendant's possession supported the testifying officer's opinion. The officer "laid great stress on the fact that" there was a *single* bag in the defendant's backpack containing a "precise amount" — "a quarter-ounce" — that was "consistent with drug dealing." (*Chakos*, at p. 368.) However, the court continued, the officer also found bags and jars containing "*irregular* amounts" in the defendant's closet, a circumstance which, based on the officer's own testimony, a reasonable trier of fact could view as being "inconsistent with dealing and . . . consistent with *lawful* use under the [CUA]." (*Ibid*.) Such an inference, the court reasoned, was indeed "intuitive because, while marijuana may be lawfully *possessed* under the [CUA], it is not exactly easily *obtainable* in open, licit circumstances." (*Ibid*.) In the court's view, the "[p]ractical difficulties [in] obtaining the drug" could explain not only the irregular amounts, but also why defendant had a gram scale in his closet — to ensure that the legal medical user

18

does not possess more than the maximum amount the CUA permits — and why, as a lawful, medical user, he had "an extra supply on hand *within* the legal amount." (*Ibid*.)  As explained above, we find that, in this case, the circumstances surrounding the possession *do* support the officer's testimony.  Thus, without deciding whether we would have reached the same conclusion in Chakos, we find that case distinguishable.

### III.  Disposition

For reasons set forth above, we affirm the Court of Appeal's judgment.


CHIN, J.


WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
CORRIGAN, J.
LIU, J.

## CONCURRING OPINION BY WERDEGAR, J.

I concur in the court's judgment affirming the judgment of the Court of Appeal. I write separately to state my view regarding the impact of the procedural forfeiture created by defendant's failure to object at trial to the testimony of a prosecution expert on distinguishing possession of marijuana for sale from possession for personal use.

As the majority states, defendant contends the evidence at trial was insufficient to establish possession of marijuana for sale (Health & Saf. Code, § 11359) because the expert who opined on that subject at trial, one of the arresting officers, lacked training and experience distinguishing between lawful possession for medical use, which defendant advanced as a defense, and unlawful possession for purposes of sale. (Maj. opn., *ante*, at p. 1.) I concur fully in the court's rejection of this insufficient evidence claim. Despite defendant's claim he possessed the marijuana only for his personal medical use, the trial record is replete with evidence of circumstances "not to be expected in connection with a patient lawfully using the drugs as medicine" (*People v. Hunt* (1971) 4 Cal.3d 231, 238 (*Hunt*)), circumstances on which both the police officer testifying as a prosecution expert and the jury itself could reasonably rely for the conclusion the marijuana was possessed for sale.

I also agree that defendant, by failing to object at trial to admission of the officer's opinion on possession for sale, has forfeited any claim the opinion was

1

erroneously admitted. (Maj. opn., *ante*, at pp. 9-11.) Speculation on defense counsel's possible tactical reasons for not objecting is beside the point. (See maj. opn., *ante*, at p. 10.) Under Evidence Code section 353, subdivision (a), the lack of an objection precludes any claim of erroneous admission regardless of whether counsel was deliberately sandbagging, thought the objection futile, or was merely inattentive. Nor does it appear, as the majority suggests, that defendant's failure to object eliminated any incentive for the prosecution to buttress the officer's qualifications as an expert. (See maj. opn., *ante*, at p. 11.) Informing the jury of the officer's special expertise in medical marijuana use would have added force and weight to his opinion and would have greatly reduced the likelihood of an insufficient evidence claim under *Hunt*, *supra*, 4 Cal.3d 231. Defendant's failure to object bars him from complaining on appeal about admission of the officer's opinion, but it does not make him responsible for any weaknesses in the evidence the People chose to put on.

Nor can I agree with the majority that the absence of a trial objection precludes defendant from arguing the officer's lack of expertise in medical marijuana rendered his opinion insufficient "*as a matter of substantial evidence review*." (Maj. opn., *ante*, at p. 11, italics added.) The majority acknowledges that while admissibility of an expert opinion is for the court to decide, the jury may still consider the expert's qualifications in determining the weight to be given his or her opinion. (Maj. opn., *ante*, at p. 12; see *Seneris v. Haas* (1955) 45 Cal.2d 811, 833 ["Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility"]; accord, *People v. Eubanks* (2011) 53 Cal.4th 110, 140.) The jury thus remains free, notwithstanding the trial court's decision on admissibility, to decide that a prosecution expert's relative lack of knowledge on a particular point reduces the probative force of his

or her opinion below the level needed to prove a fact in issue beyond a reasonable doubt.

As the majority also acknowledges, a claim of insufficient evidence requires no trial objection for its preservation.  (Maj. opn., *ante*, at p. 12; see *People v. Butler* (2003) 31 Cal.4th 1119, 1126.)  Substantial evidence to support a criminal verdict being evidence that is "reasonable, credible, and of solid value" (*People v. Johnson* (1980) 26 Cal.3d 557, 578), it follows that despite the absence of an objection to the testimony, an appellate court, reviewing the record for substantial evidence to support the verdict, may conclude a prosecution expert's relative lack of knowledge on a particular point renders his or her opinion insufficiently solid to constitute substantial evidence of guilt, even when taken with the other evidence presented.  That is precisely the conclusion this court reached in *Hunt*, *supra*, 4 Cal.3d at pages 237-238.  Defendant, in challenging the sufficiency of the evidence to support his possession for sale conviction on the ground of the officer's lack of specific expertise, simply urges us to follow *Hunt* and reach the same conclusion here.

Of course, that defendant's contention is procedurally proper does not mean it succeeds on the merits.  While the prosecution did not present evidence at trial of the officer's special training and experience with medical marijuana use, the significant evidence of his expertise that *was* presented (see maj. opn., *ante*, at pp. 13-14), together with the circumstances of possession upon which his opinion was based (*id.*, pp. 14-15), gave the expert opinion here the substantial probative force we found lacking in *Hunt*.  The majority therefore correctly rejects defendant's claim of insufficient evidence on its merits.

WERDEGAR, J.

3

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Dowl
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 183 Cal.App.4th 702
**Rehearing Granted**

_____

**Opinion No.** S182621
**Date Filed:** August 29, 2013
_____

**Court:** Superior
**County:** Kern
**Judge:** Kenneth C. Twisselman II

_____

**Counsel:**

Michelle May and John R. Hargreaves, under appointments by the Supreme Court, and Thomas M. Singman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Catherine Chatman, Jeffrey Grant and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John R. Hargreaves
Central California Appellate Program
2407 J Street, Suite 301
Sacramento, CA  95816
(916) 441-3792

Jeffrey Grant
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 327-6751