Filed 4/28/15  In re S.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E061464 |
| Plaintiff and Respondent, | (Super.Ct.No. J253927) |
| v. | OPINION |
| S.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

The trial court sustained a juvenile wardship petition (Welf. & Inst. Code, § 602) after finding true the allegation that defendant and appellant S.M. (minor) possessed marijuana for sale (Health & Saf. Code, § 11359). The court deemed the offense a felony and ordered minor to be placed in the custody of her grandmother, subject to certain probation terms.[1]

On appeal, minor argues the trial court erred in denying her motion to suppress evidence. While she makes no challenge to the finding that she possessed marijuana, minor also contends insufficient evidence supports the allegation that she possessed it for sale. We discern no error and affirm the adjudication order.

FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2014, David Wibert, an officer with the Fontana school police department was on duty in a marked patrol car. While near a high school at approximately 1:15 p.m., he saw a pickup truck with an object hanging from the rearview mirror. Through the truck's tinted rear window, Officer Wibert could see the object hanging about 13 inches below the mirror near the center of the windshield. It "was swaying back and forth, black in color." Officer Wibert "could tell that it was a string," but he could not recall "what the details entailed."

When he saw the truck, Officer Wibert was 15 to 20 feet behind it. He was concerned that the object could distract the driver or obstruct the driver's view of

---

[1] Minor does not challenge the trial court's dispositional orders on appeal.

2

pedestrians. His concern was heightened because school was letting out, the nearby crosswalk had no signals, and "kids do cross back and forth." Officer Wibert testified that he had personally seen that "even . . . the smallest object" can obstruct a driver's view. The fact that this particular object was swinging caused him additional concern regarding visibility. He could not estimate what percentage of the windshield might be impeded by the object. Instead, he explained that, "swaying back and forth it could obstruct any amount of length back and forth."

Because he concluded the object hanging from the mirror might cause a violation of Vehicle Code section 26708, subdivision (a)(2)[2] (Vehicle Code section 26708(a)(2)), Officer Wibert activated his lights and initiated a traffic stop. As he approached the vehicle, he saw a male driver[3] and a female passenger. At the jurisdictional hearing, Officer Wibert identified the passenger as minor. After the driver indicated he did not have a driver's license, Officer Wibert asked him to step outside the truck. As the driver exited the vehicle, he handed Officer Wibert a "small Ziploc baggie" of marijuana. The baggie had been on the driver's lap when Officer Wibert approached the truck.

Officer Wibert called for assistance. Other police officers, including Amanda

[2] This provision reads: "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle that obstructs or reduces the driver's clear view through the windshield or side windows."

[3] The driver was declared a ward of the court on April 8, 2014. He is not a party to this appeal.

Liabeuf and Andres Garcia, arrived at the scene within five minutes. Officer Wibert asked minor to remain in the vehicle while he interacted with the driver.

The driver was exiting the truck when Officer Liabeuf arrived. Officer Wibert told Officer Liabeuf the driver had handed him a bag of marijuana. Officer Liabeuf performed a patdown search of minor "[f]or safety reasons."[4] During this interaction, Officer Liabeuf asked minor "if she had anything on her," and she answered in the negative. However, as the patdown search continued minor said "she was going for some marijuana or some drugs" and pulled something out of her waistband. The item minor retrieved was "[o]ne big baggie" with a pipe and four smaller bags inside. Officer Liabeuf concluded that each of the small bags contained "a useable quantity" of marijuana. Minor told Officer Liabeuf that she hid the marijuana in her waistband because she "got scared" when Officer Wibert initiated the traffic stop.

To obtain help with searching the vehicle for marijuana or other drugs, Officer Liabeuf requested assistance from a canine officer. The dog provided a positive alert near the front of the vehicle. Officer Liabeuf conducted a search and found another baggie of marijuana in the center console of the truck. She was advised that another

---

[4] It appears minor had not been *Mirandized* (*Miranda v. Arizona* (1966) 384 U.S. 436) before the patdown search. After a voir dire examination of Officer Liabeuf, the trial court concluded that minor had not yet been taken into custody, such that no *Miranda* warnings were required.

officer found yet another bag of marijuana above the visor.[5]  Someone sitting in the front passenger seat would have had access to both of these bags of marijuana.

Another investigating officer, Andres Garcia, helped search the vehicle.  He located another bag of marijuana "up top" in the sunglasses compartment in the center of the vehicle.  Officer Garcia did not find any drugs or money on the passenger side of the truck.  However, he found five $1 bills in the visor on the driver's side.  He also found $254 in the driver's wallet.

Officers took minor and the driver into custody and had the vehicle towed.  Minor and the driver indicated they had recently smoked marijuana, so Officer Liabeuf transported them to the hospital for medical clearance.

On May 7, 2014, the trial court conducted a jurisdictional hearing and also heard a motion to suppress evidence by minor.  Officers Wibert, Liabeuf, and Garcia testified to the facts recited *ante*.

In addition, Officer Liabeuf opined that minor possessed marijuana with an intent to sell it.  She acknowledged that minor had no money, empty baggies or sheets showing balances owed.  Minor also had no phone, purse or backpack with her.  Unlike the driver,

---

[5]  Officer Liabeuf emphasized that she did not find this bag of marijuana.  She "was told" the bag was found "above the visor," but it appears this is the bag of marijuana that Officer Garcia found in the sunglasses compartment, which he described as being in the center of the vehicle.  An item in the middle of the vehicle would be closer to the passenger seat than one on the driver's side.  Therefore, Officer Liabeuf's slight error in describing where Officer Garcia located another bag of marijuana does not weaken her conclusion that the bag of marijuana that Officer Garcia found was within minor's reach.

minor said nothing about intending to sell marijuana. However, the following factors nevertheless indicated to Officer Liabeuf that minor had the intent to sell marijuana: first, the driver told investigating officers that he planned to sell each baggie of marijuana for $5. Also, the driver and minor were dating each other. According to the training Officer Liabeuf had received, the marijuana minor gave her was in "the type of packaging . . . commonly used for the sales of controlled substances." Officer Liabeuf also emphasized that each of the bags held the same amount of marijuana. She also noted that money was found in the vehicle, although she could not recall specifics about how much or in what denominations.

For his part, Officer Garcia concluded that a sale had occurred shortly before the traffic stop. This was in part because the driver had a bag of marijuana on his lap when Officer Wibert stopped the truck. Also, it appeared the driver had not moved the money from the visor to his wallet yet. Like Officer Liabeuf, Officer Garcia noted that there were multiple packages of marijuana in the vehicle. Finally, Officer Garcia testified that sellers of marijuana often use marijuana, and that they often resort to selling drugs to be able to afford the drugs they personally use.

A criminalist, Darci Fullner, gave additional testifimony at the jurisdictional hearing. In connection with the investigation in this case, she received two envelopes, one of which held four baggies containing "dried green plant material" and the other of which held three baggies of a similar material. Fullner tested the material and concluded that it was marijuana.

6

After the presentation of testimony summarized *ante*, the trial court took up minor's motion to suppress evidence. It found the traffic stop and patdown search were constitutional. Consequently, the court denied the motion to suppress.

Minor was the final witness at the jurisdictional hearing. She testified to the following facts:

Minor and the driver were dating at the time of the incident. The driver picked minor up from school on that day at approximately 1:00 p.m. After he retrieved minor, the driver sat in the vehicle with her "[r]ight in front of the school." They smoked two to four bowls of marijuana there. Minor did not have a pipe or any marijuana on her when she was at school that day. Rather, the driver had provided both to her after school. Even after school, minor did not buy any marijuana from the driver; instead, he shared some with her because they were dating.

The driver did not have a bag of marijuana on his lap when the officer first approached the vehicle. Instead, he had a knife in his lap, which he handed to Officer Wibert. The driver had already removed "the whole baggie that had the little ones inside of it" from his pocket and handed it to minor. Minor also had the "piece" (i.e. the pipe). She became scared so she put the marijuana and the pipe in her pants.

At the time, minor thought the driver had given her "all of the marijuana." There were four little bags inside one bigger bag, but this was how the driver always acquired marijuana when he bought it. Minor had never seen the driver get money for marijuana or accompanied him when he bought marijuana. As far as she knew, "he just had it and

7

he was sharing it." Minor did not think the baggies the driver gave her were for sale. Once the driver handed over the marijuana, minor thought it belonged to her. She intended to smoke it, but not to sell it.

On the day of the incident, minor did not know that the driver was selling marijuana. In fact, she continued to think he was not selling marijuana at the time of the jurisdictional hearing. The reason the driver had money was because he did construction work for his father. Also, the driver told minor he had no marijuana on him other than what they were smoking.

At the close of evidence, the trial court found minor's explanation regarding what happened was not credible. The court noted minor claimed to have been smoking marijuana in the truck immediately before the traffic stop, but no officer mentioned seeing or smelling smoke. In addition, no officer mentioned a knife, and the number of bags of marijuana submitted to the criminalist for testing only matched the facts presented if the driver had a bag of marijuana rather than a knife on his lap. The trial court found minor had possessed marijuana for sale and sustained the wardship petition.

ANALYSIS

On appeal, minor argues first that the trial court erred in denying her motion to suppress evidence because there was no evidence showing that Officer Wibert had a reasonable suspicion that the item hanging from the rearview mirror amounted to a Vehicle Code violation. We disagree and find Officer Wibert's testimony contained specific, articulable facts establishing that the driver was engaging in criminal activity.

8

Minor also attacks the sufficiency of the evidence supporting the finding that she intended to sell marijuana. We again disagree, this time because substantial, if circumstantial, evidence supports the jurisdictional finding.

1. *The trial court properly denied minor's suppression motion*

Penal Code section 1538.5, subdivision (a)(1)(A), allows a defendant to move for suppression of evidence on grounds including that a warrantless search or seizure was unreasonable. "If the initial stop of [an] automobile was unlawful, then all subsequent observations of the officers and contraband secured in a search following an arrest which flows from those observations must be suppressed as more pieces of forbidden fruit from that familiar grove of poisonous trees. (*Wong Sun v. United States* (1963) 371 U.S. 471.)" (*People v. Leyba* (1981) 29 Cal.3d 591, 598, fn. 4 (*Leyba*).) In the first portion of this opinion, we therefore consider the constitutionality of Officer Wibert's stopping the truck on the suspicion that the item hanging from the rearview mirror violated the Vehicle Code.

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; see *In re Raymond C.* (2008) 45 Cal.4th 303, 307.) A traffic violation need not have actually occurred before a traffic stop can be lawful; rather, the test is whether the detaining officer had "a reasonable suspicion that *any* traffic violation has occurred, even if it is

9

ultimately determined that no violation did occur." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 510, italics in original.)  In fact, the purpose of a warrantless traffic stop when the detaining officer suspects a driver or passenger is engaged in criminal activity is to investigate and determine whether a violation of the law has in fact occurred.  (*Leyba*, *supra*, 29 Cal.3d at p. 599.)

"In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence.  [Citations.]  We independently review the trial court's application of the law to the facts.  [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

In this case, Officer Wibert decided to stop the truck in which minor was a passenger because he saw an object hanging from the rearview mirror and thought it might disrupt the driver's view enough to cause a violation of Vehicle Code section 26708(a)(2).  The object was long enough to extend more than a foot below the rearview mirror, and it was substantial enough that Officer Wibert could see it through a tinted rear window from 15 to 20 feet away.  In addition, the object was in motion, which means it could have obstructed a large portion of the windshield as it moved from side to side. Officer Wibert testified that he had personally experienced how even very small items may obstruct a driver's view.  Given this experience, he was especially concerned about the ability of the truck's driver to see clearly because school had just let out.  Officer Wibert, who was employed by a school district, knew that students tended to "walk out in

10

the roadway." Even when they used the crosswalk, there was a risk that a driver would not see them because the crosswalk was not controlled by any traffic signals. Because the object was moving, Officer Wibert feared it might "obstruct the view of a kid maybe riding a bicycle, not paying attention to what they are doing."

Officer Wibert's testimony to the facts described above constitutes substantial evidence supporting the finding that he reasonably thought the object might "obstruct[] or reduce[] the driver's clear view through the windshield." (Veh. Code, § 26708(a)(2).) At the very least, his suspicion was reasonable enough that he was justified in stopping the truck to investigate.

Minor argues this case is on point with *People v. White* (2003) 107 Cal.App.4th 636 (*White*). That opinion reversed a trial court order denying suppression motions by defendants charged with marijuana-related offenses. (*Id.* at p. 639.) The defendants were arrested after an officer with the California Highway Patrol noticed a tree-shaped air freshener hanging from the rearview mirror of the car one of the defendants was driving. (*Id.* at pp. 640-641.) "The air freshener remained in a stationary position while the officer followed the . . . vehicle." (*Id.* at p. 641.) The officer never testified that he thought the air freshener actually obstructed the driver's view. (*Id.* at p. 642.) He also "never testified to other specific and articulable facts, like hesitant or erratic driving, that might suggest the driver's clear view was impeded." (*Ibid.*) In contrast, the defense presented expert testimony that the air freshener covered less than .05 percent of the windshield, and that it would not obstruct the view of a six-foot-tall driver. (*Ibid.*)

11

Furthermore, the vehicle's driver testified that the air freshener did not in fact obstruct his view. (*Ibid.*)

*White* is distinguishable on multiple grounds. First, the object hanging from the rearview mirror in this case swayed back and forth, while the air freshener in *White* was stationary. Minor makes no attempt to explain why an object that moved would not increase the extent to which the driver's visual field was obstructed. Second, Officer Wibert explicitly testified that he thought the object could impair the driver's view, while the officer in *White* made no such statement. Officer Wibert even gave several reasons, including his personal experiences with the visual disruption caused by even small item, why he thought the object hanging from the rearview mirror violated Vehicle Code section 26708(a)(2). Finally, minor in this case, unlike the defendants in *White*, presented no evidence that the object did not actually impede the driver's view.

Minor complains Officer Wibert, like the officer in *White*, never testified to facts showing that the driver's view was actually affected by the hanging object, such as hesitant or erratic driving. While the *White* court indicated testimony to this effect would have been helpful, nothing in the opinion suggests that such a showing is necessary before a traffic stop can be found lawful when the stop was made on the ground that the driver's view through the windshield is impaired. Also, in *White* the other evidence the People presented failed to show that the officer had a reasonable suspicion that the air freshener obstructed the driver's view. Here, for the reasons set forth *ante* the evidence does support such a finding.

12

Minor makes much of Officer Wibert's testimony that the object he saw was "a string." Because strings are likely to be extremely thin, minor reasons the evidence cannot support a reasonable suspicion that the string sufficiently obstructed the driver's view. As a threshold matter, we question whether Officer Wibert really meant that he saw a string and only a string. After indicating he "could tell that it was a string," Officer Wibert continued by saying, "I can't remember exactly what . . . the details entailed." We have some difficulty imaging what other "details" might be inherent in a string, and we wonder how a string with nothing suspended from it would have sufficient mass to sway back and forth as the car moved. However, even if Officer Wibert meant that all he saw was a string, this would not foreclose a finding that the object could have obstructed the driver's vision. After all, the "string" was thick enough that it was visible at a distance and through a tinted rear window.

More significant is that even something as thin as a crack in a windshield may provide reasonable cause to stop a vehicle on the ground that a Vehicle Code violation was occurring. (See Veh. Code, § 26710 ["It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear."]; see also *People v. Vibanco* (2007) 151 Cal.App.4th 1, 8 [cracked windshield justified investigatory traffic stop]; *People v. Miller* (1972) 24 Cal.App.3d 221, 224 [traffic stop was reasonable because cracked windshield was "unlawful"]; and *People v. Superior Court* (1968) 266 Cal.App.2d 685, 689-690 [cracked windshield may impair visibility].)

13

For each of these reasons, substantial evidence supports the finding that Officer Wibert had specific, articulable reasons for suspecting that the driver of the truck was violating Vehicle Code section 26708(a)(2).  The trial court therefore properly denied minor's motion to suppress evidence.

2. *Substantial evidence supports the judgment*

In reviewing minor's claim that proof of an essential element was lacking, "we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 509.) In the course of this inquiry, we " ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*Ibid*.) We remain mindful that, "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Even when the People rely primarily on circumstantial evidence, the standard of review is the same.  (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)  " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

To prove that minor possessed marijuana for sale, the People must show that "the defendant possessed the contraband with the intent of selling it and with knowledge of

14

both its presence and illegal character." (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.) Intent to sell marijuana may be established by circumstantial evidence. (*People v. Harris* (2000) 83 Cal.App.4th 371, 374.) " 'In cases involving possession of marijuana and heroin, it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale based upon matters such as quantity, packaging, and the normal use of an individual.' " (*People v. Dowl* (2013) 57 Cal.4th 1079, 1084 (*Dowl*).)

Minor in this case handed Officer Liabeuf a bag containing four smaller bags of marijuana. Each of the four bags held approximately the same quantity, and the packaging of each quantity was similar. In fact, Officer Liabeuf testified that the marijuana that had been in minor's pants was in "the type of packaging . . . commonly used for the sales of controlled substances." In addition, Officer Liabeuf located another bag of marijuana in the center console, which was in minor's reach when she was in the passenger seat. From this location, minor could have reached even the bag of marijuana that was in the sunglasses compartment in the center of the truck. Also, although minor did not admit intending to sell the bags of marijuana, the driver did. Because the driver was minor's boyfriend, they were in the same vehicle, and they both possessed marijuana, the trial court could have reasonably inferred that the driver and minor intended to sell marijuana together. In short, substantial evidence supports the finding that minor intended to sell at least some of the marijuana she possessed.

15

Minor insists this conclusion cannot follow, in part because she had no money or balance sheets in her possession. However, her boyfriend had $254 in his wallet, and an additional $5 in singles was found in the driver's-side visor. If minor and her boyfriend were jointly selling marijuana, we see no reason why they would not have decided that only one of them would hold the proceeds of their sales. Since minor indicated the driver was the only member of the couple who bought marijuana, he would be the logical one to choose to hold their funds. As for pay-owe sheets, these are unnecessary if the driver and minor only accepted cash as payment for marijuana. (See *Dowl*, *supra*, 57 Cal.4th at p. 1261 [expert testimony that balance sheets are unnecessary if all marijuana sales are in cash].) The presence of cash in the visor and the driver's wallet indicates that at least some of the customers did, in fact, pay in cash.

Minor also makes much of her own testimony that she did not intend to sell marijuana, did not think the driver was selling marijuana, and did not know the truck contained any marijuana other than what she and the driver had been smoking. Moreover, minor's emphasis on her testimony that she and the driver had been smoking marijuana implies that the marijuana the police seized was for personal use rather than for sale. We note, however, that the trial court explicitly found minor's story to be not credible. We will not undermine this determination on appeal. In particular, we, like the trial court, wonder why none of the three officers who testified mentioned the smell of marijuana smoke emanating from the truck. If minor had been smoking marijuana in the

16

15 minutes in between getting picked up from school and the traffic stop, it is difficult to see how no odor would have been present.

"To be sure, [minor] offered explanations for some of the[] circumstances [surrounding the offense], but the [court] did not have to believe them." (*Dowl*, *supra*, 57 Cal.4th at p. 1092.) It did not and instead made an explicit finding that minor was not credible. We affirm the jurisdictional order because substantial evidence from witnesses other than minor supports the judgment.

DISPOSITION

The trial court's jurisdictional order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

KING

J.

17