Filed 3/28/14  P. v. D'Amoun CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VANCOIS LOUISE D'AMOUN,<br><br>        Defendant and Appellant. | A136126<br><br>(Sonoma County<br>Super. Ct. No. SCR599048) |

        Vancois Louise D'Amoun appeals his conviction for unlawfully possessing and transporting marijuana for sale.  (Health & Saf. Code, §§ 11359, 11360, subd. (a).)[1]  In the court below, he admitted to possessing and transporting marijuana, but claimed his activities were lawful under the Compassionate Use Act (CUA) (§ 11362.5) and the Medical Marijuana Program Act (MMPA) (§ 11362.775) because he possessed and transported the marijuana on behalf of a lawful medical marijuana collective.

        D'Amoun now seeks reversal, arguing there was insufficient evidence of his intent to sustain his convictions.  He also contends the trial court committed a number of instructional errors that violated his constitutional rights.  We disagree and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

        In a March 12, 2012 information, D'Amoun was charged with one count of unlawfully possessing marijuana for sale and one count of unlawfully transporting

---

[1] All statutory references are to the Health and Safety Code.

1

marijuana. On June 19, 2012, after a jury trial, he was convicted of both counts. He filed a timely notice of appeal on July 25, 2012.

*The Prosecution's Case*

On a dark, rainy evening in March 2011, Santa Rosa Police Officer Katharine Caramella saw a car driving through Guerneville without its lights on. She initiated a traffic stop, and when she approached the car, the driver identified himself as appellant D'Amoun. He gave Officer Caramella an Arizona identification card and told her he did not have a driver's license because it was suspended. He said he knew he should not be driving and explained that his passenger, 18-year-old Jessica Hardwick, had been driving but was not feeling well.

When Officer Caramella asked Hardwick for her license, the officer smelled fresh marijuana coming from the vehicle. Caramella asked D'Amoun if he had marijuana, and he said yes. He told her he had a medicinal prescription, and handed her a torn green piece of paper.

After Officer Caramella had searched both D'Amoun and Hardwick but found no marijuana, she opened the trunk. In it was a large duffel bag holding 11 large, clear plastic bags of marijuana.[2] D'Amoun admitted the marijuana was his and that each bag contained one pound of marijuana. He claimed he had gotten it from a dispensary in Santa Rosa. A second officer who responded to the scene of the stop heard D'Amoun say, "[i]t 'is all bad now'" when Officer Caramella discovered the marijuana in the trunk. When booked at the jail, D'Amoun told Officer Camarella he also had marijuana in his left sock. The marijuana in his sock weighed approximately 7.7 grams.

Hardwick testified she and D'Amoun had driven from Walnut Grove, California to Oregon. She testified they stayed in Oregon for two to three hours fishing, then drove back to Santa Rosa via McKinleyville, where they stopped in a parking lot. There, a man Hardwick did not know showed D'Amoun a slip of paper and put a duffle bag in their trunk. She did not see what was in the bag and appellant told her not to ask what it was.

---

[2] In the court below, the parties stipulated that the substance seized from the trunk was marijuana.

D'Amoun did not tell her the purpose for the trip and told her not to ask any questions, but he assured her everything was legal, so she should not worry. Hardwick stated she made the trip with D'Amoun because she had just turned 18 and needed to pay her phone bill but had no money. She said D'Amoun had offered to pay the bill for her if she made the trip.[3]

During the traffic stop, Hardwick asked to talk to the officer somewhere away from D'Amoun. She told the officer she was scared for her safety and was afraid of what appellant might do or say. Officer Caramella testified Hardwick expressed the fear that D'Amoun "would put a hit out on her." Hardwick testified that she had never discussed marijuana with D'Amoun, and he had never told her anything about his medical conditions. In fact, she did not know he had any medical conditions. He never told her anything about collectives or dispensaries that distributed marijuana.

Santa Rosa Police Officer Jesse Cude testified as an expert in the field of possession of marijuana and transportation of marijuana for sale. Cude had been a Santa Rosa police officer for approximately 16 years and had worked as a Los Angeles police officer for a couple of years before that. Cude testified regarding his training in the area of investigating narcotics, specifically marijuana. Specifically, prior to becoming a police officer he worked for the Orange County Probation Department in the juvenile division, where he dealt with juvenile drug use. While working in the probation department he obtained a B.A. in criminal justice, taking classes on illegal possession of drugs, drug possession, and use. Cude attended the Los Angeles Police Academy and took more classes on drug use and possession and the laws pertaining to these subjects after he went to work for the Los Angeles Police Department. As a Santa Rosa police officer he worked in the bike patrol unit for six years dealing with narcotics, both possession and use. He attended a class on drug recognition, and during those six years

---

[3] At trial, Hardwick denied telling the police D'Amoun had offered to pay her "with some buds[.]" In contrast, Officer Caramella testified that during the traffic stop, Hardwick told her that D'Amoun had paid Hardwick by giving her 40 marijuana buds before the trip to Oregon.

Cude arrested hundreds of people for drug possession and possession for sales, and he interviewed hundreds of people regarding how they used and sold drugs. Thereafter, he became a detective working undercover in the area of narcotics and property crimes.

As a detective, Cude attended several classes offered by the Department of Justice on drug and narcotic sales. He was a member of the California Narcotics Officers Association and went to annual update trainings and attended classes explaining the legal possession of marijuana by people with serious medical conditions. He also took a seminar on compliance with the CUA. Cude testified he had talked to dozens of people with legitimate, physician-issued medical marijuana recommendations about the process of obtaining medical recommendations. During the course of these conversations Cude also heard descriptions of people misusing medical marijuana recommendations. Cude has investigated more than 50 marijuana transportation cases, and more than 100 possession of marijuana for sale cases. Cude had also qualified as an expert in the field of possession of marijuana for sales and transportation of marijuana for sales several times.

Based on the quantity of marijuana found in D'Amoun's car, Cude opined it would provide approximately 5,000 doses for the average recreational user and last a heavy user (one who used two grams a day), approximately 6.84 years. He estimated its street value at approximately $27,500. Based on the testimony of Hardwick and the officers involved in the stop, the amount of marijuana discovered, the reports generated in connection with the case, and his prior experience, Cude opined that the marijuana was possessed for sale and that it was being transported illegally for sale. He reached this opinion relying primarily on the quantity of marijuana and the worth of that marijuana. He also relied on the fact that D'Amoun had driven all the way to Oregon to pick up the marijuana, had picked up the marijuana in a parking lot, and had done the "deal in a trunk."

*The Defense Case*

Sonoma County Public Defender Investigator Darryl Robinson testified that during his investigation of this case for appellant he made contact with a woman named

4

Diana at Nature's Own Healing Center, a marijuana dispensary in Orangevale, California. Robinson went to the location and spoke with Diana. He gave her a subpoena which he subsequently cancelled. Thereafter, he was unable to contact her, and when he returned to the location, he found the dispensary closed. Robinson did not check any documentation to determine if the Nature's Own Healing Center had an operating permit, whether it had qualified medical marijuana patients as members, or whether it was organized as a nonprofit collective. Nor did he check to see if it was organized into a nonprofit collective, or determine how much marijuana was being sold.

D'Amoun testified on his own behalf. He stated he had obtained a physician's recommendation for the use of medical marijuana. He identified defendant's exhibits A1, A2, and C as recommendations he obtained from various physicians. He obtained medical marijuana by belonging to various collectives, including Nature's Own Healing Center. According to appellant, the collective also operates a dispensary, and he became a member by "contact" with the collective.

As a member of this collective D'Amoun's responsibilities were to participate and assist in the transportation of cannabis to various patients. He was asked to help transport cannabis because of his size and intimidating appearance. Appellant testified the collective obtained its marijuana from "growers up north," and it made all of the arrangements with the growers. His role was limited to picking up and delivering the marijuana. In exchange, he received marijuana from the collective.

In March 2011, the dispensary asked D'Amoun to make a pick-up of marijuana. He was supposed to meet a member of the collective named "Chris" from whom he had previously obtained marijuana. They were to meet Chris in McKinleyville, and D'Amoun asked Jessica Hardwick to drive him. On March 6, they left Walnut Grove between 9 and 11 a.m. and drove to Oregon, where they arrived late that night. The next morning he and Jessica went fishing with Chris and his wife and children. After fishing, they drove in a caravan back toward McKinleyville, where Chris gave D'Amoun the bag of marijuana and the paperwork.

5

After the exchange they drove to Santa Rosa, and D'Amoun began driving because Hardwick did not feel well. They were stopped by police and when D'Amoun was asked if he had any marijuana in the vehicle, he stated he had some in his sock. He gave the officer his two recommendations for marijuana.

After D'Amoun was released from Sonoma County jail, he contacted Diana from the Nature's Own Healing Center and went to the dispensary, which was still operating but in the process of closing. Appellant has been in contact with Diana and testified that the dispensary is still in the process of reopening at a new location.

D'Amoun also testified regarding his use. In a "good month" he uses more than a half ounce a day. In addition to smoking marijuana, he uses pills and oils, and edibles, derived from marijuana. He explained that approximately one pound of marijuana makes about a half ounce of oil. On a bad day appellant consumes two ounces of marijuana easily.

DISCUSSION

D'Amoun argues there is insufficient evidence of his intent to commit the charged offenses, and thus the jury's verdict must be reversed. He also contends the trial court committed various instructional errors that require reversal. We address each argument in turn.

I.      *The Jury's Verdict Is Supported by Substantial Evidence of Intent.*

D'Amoun contends there was insufficient evidence to support the intent element of the crimes of which he was found guilty. Specifically, he contends Officer Cude was unqualified to testify as an expert on the medical use of marijuana or on the lawful possession or transportation of marijuana. We conclude we need not address whether Cude qualified as an expert in this field or not, because even without such expert testimony, there is substantial evidence to sustain D'Amoun's conviction.

Initially, we question whether D'Amoun has preserved this objection for appeal. (See *People v. Dowl* (2013) 57 Cal.4th 1079, 1087 (*Dowl*) [failure to object to police officer's qualifications to render expert opinion on lawful possession of marijuana forfeits issue on appeal].) It appears defense counsel made an untranscribed sidebar

objection. The only record of the objection is a comment by the court that counsel had objected to Cude's qualifications "because of the lack of medicinal marijuana training and experience." The trial court gave defense counsel the opportunity to elaborate on this objection on the record, but counsel declined. We therefore do not know the precise nature of D'Amoun's objection, other than that it concerned Cude's claimed lack of training and experience in medical marijuana.[4] Despite the limited record, we will treat the matter as preserved for review. (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 355-356.)

Whatever the nature of the unreported objection, D'Amoun cannot challenge Cude's "expertise in identifying for the jury circumstances that are generally consistent with an intent to sell." (*Dowl, supra,* 57 Cal.4th at p. 1090.) There was no objection below to Cude's qualifications as an expert in transportation and possession of marijuana for sale, and the court explicitly recognized him as an expert on those issues. Moreover, the jury heard not only Cude's opinion regarding D'Amoun's intent, it also heard "the officer's testimony regarding the various circumstances that, in his experience, were consistent with [the] conclusion" that D'Amoun possessed and transported the marijuana for sale.[5] (*Id*. at pp. 1089-1090.) Circumstances indicative of possession and

---

[4] Indeed, it appears the court may have overruled the objection. After noting the objection had been made, the court stated, "What I ruled was it doesn't take much. There is enough in the record, certainly it goes to the strength of his opinion, but I thought there was enough in the record to qualify him." This language is susceptible to differing interpretations, one of which is that the court found Cude qualified as an expert in the legal use of medical marijuana, despite his limited training in that field.

[5] D'Amoun's attack on the sufficiency of Cude's testimony relies heavily on *People v. Hunt* (1971) 4 Cal.3d 231 (*Hunt*) and *People v. Chakos* (2007) 158 Cal.App.4th 357 (*Chakos*). Those cases are distinguishable from the one before us for largely the same reasons set forth in *Dowl, supra,* 57 Cal.4th at pages 1092-1094. For the reasons we explain below, in this case, as in *Dowl,* there was "evidence of some circumstances not to be expected in connection with a patient lawfully using the drugs as medicine[.]" (*Hunt, supra,* 4 Cal.3d at p. 238; see *Dowl, supra,* 57 Cal.4th at p. 1093.) Furthermore, we observe that in *Chakos,* the testifying officer had absolutely *no* training in lawful use under the CUA and had never before arrested a person with a physician's recommendation for the use of medical marijuana. (*Chakos, supra,* 158 Cal.App.4th at

transportation for sale include the large quantity of marijuana, the way in which it was packaged, and the number of packages found. (See *id.* at p. 1090.)

Beyond Cude's testimony, there was other evidence supporting the jury's finding that D'Amoun acted with the requisite criminal intent. As evidence of intent, the jury could properly consider the large quantity of marijuana in appellant's possession and the fact he had transported it over a great distance.[6] (*Dowl, supra,* 57 Cal.4th at p. 1090 [one factor typically indicating marijuana was possessed for sale is large quantity of the drug]; see *People v. Wayman* (2010) 189 Cal.App.4th 215, 223 ["the amount of marijuana involved, as well as the method, timing and distance of the transportation, logically pertain to the central question of whether the transportation at issue was for the patient's own personal medical use"].) It could also consider the evidence that D'Amoun paid Hardwick with 40 "buds" of marijuana. (See *People v. Peck* (1996) 52 Cal.App.4th 351, 357 [sale of drugs includes transfers other than for money].)

In addition to those facts, the jury could also infer that D'Amoun's efforts to conceal the marijuana were indicative of guilt. (See *People v. MacCagnan* (1954) 129 Cal.App.2d 100, 105 ["Attempts . . . to conceal from an arresting officer a contraband object . . . are pertinent proofs of a guilty mind."].) D'Amoun himself testified he used a "smuggler's bag" to transport the marijuana because the bag was smell-proof. He described the bag as a "common tool, so when we get stopped, police officers don't smell it." D'Amoun also kept Hardwick in the dark about the contents of the bag and

___

pp. 361, 362, 367-368.) Cude had significantly more experience and training in medical marijuana use than the officer in *Chakos,* since Cude attended training and classes on legal possession of marijuana and had received specific instruction on compliance with the CUA. He was also personally familiar with many holders of physician-issued medical marijuana recommendations.

[6] Although neither party mentions the issue in its brief, the jury was instructed that the CUA provided no defense to the importation of marijuana into California. In closing argument, the prosecutor told the jury, "If you find that the defendant actually obtained that marijuana in Oregon and brought it down to California, the [CUA] does not apply." Thus, if the jury believed D'Amoun obtained the marijuana while in Oregon, it could have convicted him without consideration of his CUA defense.

instructed her not to ask any questions about it.[7]  And although he claimed at trial he told Officer Caramella about the marijuana in his sock at the time of the traffic stop, she testified he did not reveal its presence until after she transported him to the Sonoma County jail.

The trial court also correctly instructed the jury it could consider evidence that D'Amoun had made false statements to the police at the time of his arrest.  (*People v. Kaurish* (1990) 52 Cal.3d 648, 682 [evidence that defendant made false statements at time of arrest is admissible to show consciousness of guilt].)  When he was stopped, he first told the police he had obtained the marijuana from a dispensary in Santa Rosa, but at trial he claimed he had gotten it from Chris on his way back from Oregon.  (See *People v. Thomas* (1992) 2 Cal.4th 489, 515 [defendant's inconsistent accounts of his activities on night of crime permitted jury to infer he was lying to conceal his guilt]; *People v. Montero* (1962) 200 Cal.App.2d 295, 299 [false statements to police about source of marijuana indicative of guilt].)

D'Amoun characterizes the foregoing evidence as "speculative" and contends it is not sufficiently substantial to support the jury's finding.  He argues the People have incorrectly focused on their interpretation of his " 'secretive' behavior, an interpretation based on the alleged ignorance of appellant's traveling companion about the purpose of the trip," and his "alleged statements at the time he was stopped in Santa Rosa." Obviously, however, it was up to the jury to determine whether Hardwick was in fact ignorant of the purpose of the trip and whether D'Amoun made the statements at issue. D'Amoun also argues his own testimony about the circumstances surrounding his use of medical marijuana was uncontested, but even if we were to agree that his testimony was not contradicted by any of the other evidence, that would not compel the jury to accept it. (See *Dowl, supra,* 57 Cal.4th at p. 1092 [jury did not have to believe defendant's innocent explanations for circumstances indicating he possessed marijuana for sale].)  In

---

[7] In contrast to these efforts to conceal the marijuana, Officer Cude testified to his experience with holders of medical marijuana cards who were happy to explain how they obtained their marijuana and the ailments for which they used it.

9

essence, D'Amoun is inviting us to reweigh the evidence, something a reviewing court may not do. "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence." (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1747.)

II.     *The Trial Court Did Not Commit Prejudicial Instructional Error.*

D'Amoun makes a number of claims of instructional error. First, he argues the trial court erred in instructing the jury that in determining whether the marijuana was possessed or transported solely on behalf of a lawful collective, the jury could consider whether the collective had a business license and whether it was organized and registered in compliance with a local ordinance or state government agency. Second, D'Amoun contends the court erred in instructing the jury it could not consider the medical marijuana recommendations he had in his possession at the time of arrest for the truth of the matter. Third, he claims the court should have instructed the jury that: (1) his testimony was sufficient for the jury to find he was a qualified patient; (2) his testimony was sufficient for the jury to find his participation in the collective provided a complete defense to the crimes of which he was charged; and (3) the prosecution had the burden of disproving his affirmative defense once it was raised. We will address these arguments after setting out the instruction given to the jury and our standard of review.

A.     *The Text of the Instruction*

The trial court gave the jury a modified version of CALCRIM No. 2361:

"The defendant is charged in Count II with importing into California or transporting more than 28.5 grams of marijuana, a controlled substance in violation of Health and Safety Code section 11360(a). To prove that the defendant is guilty of this crime, the People must prove that:

"1.     The defendant unlawfully transported into California or transported a controlled substance;

"2.     The defendant knew of its presence;

10

"3.     The defendant knew of the substance's nature or character as a controlled substance;

"4.     The controlled substance was marijuana;

"AND

"5.     The marijuana possessed by the defendant weighed more than 28.5 grams.

"*Marijuana* means all or part of the *Cannabis sativa L.* plant, whether growing or not, including the seeds and resin extracted from any part of the plant.

"A person *transports* something if he or she carries or moves it from one location to another, even if the distance is short.

"A person does not have to actually hold or touch something to transport it. It is enough if the person has control over it or the right to control it, either personally or through another person.

"Possession or transportation of marijuana is lawful if authorized by the Compassionate Use Act. The Compassionate Use Act does not provide a defense to importation of marijuana into California. The Compassionate Use Act allows a person to possess or transport marijuana when:

"1.     Possessed by a qualified patient for personal medical purposes when a physician has recommended or approved such use for a serious medical condition;

"AND/OR

"2.     Transported or possessed solely on behalf of a lawful California collective or cooperative.

"A qualified patient for purposes of the Compassionate Use Act is defined as: A seriously ill patient for whom a physician has deemed marijuana an appropriate treatment and for whom the physician has recommended the use of marijuana. Serious illness within the meaning of the compassionate use act include [sic], but are not limited to cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine or other illnesses. Once a patient has obtained a recommendation to use marijuana, there is no requirement to periodically renew the doctor's recommendation for it to remain valid.

11

"For the purposes of the Compassionate Use Act, a collective is an organization that facilitates the collaborative efforts of patient and caregiver members who associate within the state of California in order to collectively or cooperatively cultivate marijuana for medical purposes.  A collective need not have any particular legal form, although it may organize as a nonprofit business to carry out its activities.

"The amount of marijuana possessed or transported must be reasonably related to the collective's current medical needs.  In deciding if marijuana was transported for medical purposes, also consider whether the method, timing, and distance of the transportation were reasonably related to the collective's current medical needs.

"To decide if marijuana is transported or possessed solely on behalf of a lawful collective or cooperative you may consider the following factors among others:

- Was the amount of marijuana reasonably related to the members of the collective current medical needs?
- Were members who associated collectively or cooperatively to cultivate, possess or transport marijuana all qualified medicinal marijuana patients?
- Was the defendant a qualified patient in the collective?
- Had the cooperative or collective obtained a business license?
- Was the cooperative or collective a non-profit corporation?
- Was the cooperative or collective formed, organized and registered in compliance with a local ordinance or state government agency?
- Does the collective or cooperative obtain or distribute marijuana to other than a qualified collective patient?
- Had the collective or cooperative obtained or distributed only marijuana cultivated by collective members?

"A collective or cooperative may not cultivate or distribute marijuana for profit, but may receive compensation for actual expenses, including reasonable compensation for services provided to an eligible qualified patient to enable that patient to use medicinal marijuana under the law, or out of pocket expenses incurred providing those services, or both.

12

"The People have the burden of proving beyond a reasonable doubt that the defendant unlawfully possessed or transported marijuana. It is a defense to charges of unlawful possession or transportation of marijuana that the defendant possessed the marijuana lawfully within the meaning of the Compassionate Use Act. If the People have not met their burden of proving the unlawfulness of the possession or transportation, you must find the defendant not guilty of these crimes."

B.      *Standard of Review*

" 'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' [Citation.] We determine the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction. [Citation.] The absence of an essential element from one instruction may be cured by another instruction or the instructions taken as a whole. [Citation.] Further, in examining the entire charge we assume that jurors are ' " ' "intelligent persons and capable of understanding and correlating all jury instructions which are given." ' [Citation.]" [Citations.]' [Citation.]" (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

C.      *California's Medical Marijuana Laws*

The possession and transportation of marijuana are generally illegal in California. (§§ 11357-11360.) The CUA, however, provides that "[s]ection 11357, relating to the possession of marijuana . . . shall not apply to a patient . . . who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).) In addition, under the MMPA, qualified patients "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions" for the transportation or possession of medical marijuana. (§ 11362.775.) The MMPA thus creates an affirmative defense to prosecution for certain classes of people, including qualified patients. (*People*

13

*v. Colvin* (2012) 203 Cal.App.4th 1029, 1032 (*Colvin*).) "[T]o be entitled to a defense under section 11362.775, a defendant must, first, be either a qualified patient, person with a valid identification card or a designated primary caregiver. Second, the defendant must associate with like persons to collectively or cooperatively cultivate marijuana." (*Id.* at p. 1037.)

An accused who relies on this defense has the burden of proof as to the facts underlying it. (See *People v. Mower* (2002) 28 Cal.4th 457, 477 (*Mower*) [burden with regard to defense under § 11362.5, subd. (d)].) He need not, however, prove those facts by a preponderance of the evidence, but is "required merely to raise a reasonable doubt as to those facts[.]" (*Mower*, *supra*, 28 Cal.4th at p. 464.)

D. *In Deciding Whether D'Amoun Acted on Behalf of a Lawful Collective, the Jury Could Properly Consider the Factors Listed in the Instruction.*

D'Amoun contends it was improper for the trial court to instruct the jury that in determining whether the marijuana was possessed for the benefit of a collective, the jurors could *consider* whether the cooperative had a business license and whether it was organized and registered in compliance with a local ordinance or state government agency. We find no error.

First, the trial court did not tell the jury the two challenged factors were prerequisites to the operation of a lawful collective. Instead, it instructed the jury that in deciding whether the marijuana was possessed and transported on behalf of a lawful collective or cooperative, "you *may consider* the following factors among others[.]" (Italics added.) The jurors were never instructed that obtaining a business license or organizing and registering in compliance with a local ordinance or a state agency was legally required.

In addition, the factors listed in the instruction find support in both the case law and the Attorney General's "Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use" (A.G. Guidelines).[8] In *Colvin,* the court concluded the

---

[8] The A.G. Guidelines are available at
http://www.ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pd

14

collective at issue was lawful, relying on the fact that it had "obtained its business licenses, was a nonprofit corporation, and was in the process of complying with then applicable ordinances." (*Colvin*, *supra*, 203 Cal.App.4th at p. 1038; accord *People v. Jackson* (2012) 210 Cal.App.4th 525, 539 [collective must be nonprofit, and "a jury may consider . . . its formal establishment as a nonprofit organization, the presence or absence of any financial records, the presence or absence of processes by which the enterprise is accountable to its members, the size of the enterprise's membership and the volume of business it conducts"]; A.G. Guidelines, *supra,* § IV.A.2., p. 8 ["as a practical matter [a collective] might have to organize as some form of business to carry out its activities"]; *id*. § IV.B.2., p. 9 [those engaging in medical marijuana transactions must obtain seller's permit for tax purposes].) Thus, whether it would have been proper to instruct the jury that a legal medical marijuana collective *must* obtain a business license and comply with local ordinances or state agency requirements, it certainly was not error to *permit* the jury to consider these factors in assessing whether D'Amoun possessed the marijuana on behalf of a lawful collective.

  E.  *The Jury Instructions Adequately Described the Burden of Proof.*

  D'Amoun also argues the instructions either improperly shifted the burden of proof to him or inaccurately described the burden of proof on the CUA defense. We cannot agree.

  To begin with, the trial court and counsel discussed this instruction extensively and with a particular focus on the issue of burden of proof. Indeed, when the prosecutor raised concerns about whether the instruction adequately dealt with the question of the defendant's burden of proof or production on his affirmative defense, D'Amoun's counsel disagreed and expressed his agreement with the instruction ultimately given by the trial court. D'Amoun points us to nothing in the record showing that his trial counsel requested different language, and his claim is therefore forfeited. (See *People v. Frazier* (2005) 128 Cal.App.4th 807, 823 [defendant forfeited claim that instruction defining

f (as of Mar. 10, 2014). Although they are not binding, California courts have accorded them considerable weight. (*Colvin, supra,* 203 Cal.App.4th at p. 1040, fn. 11.)

15

"primary caregiver" was insufficient where he failed to request clarification of instruction in trial court].)

Even if the claim were not forfeited, we would reject it. Appellant appears to argue the jury should have been instructed that his testimony was sufficient to provide a complete defense to the charges. While the jury was not given precisely that instruction, it was repeatedly told that the People bore the burden of proof beyond a reasonable doubt. The jurors were also instructed that possession and transportation of marijuana are lawful if authorized by the CUA and that if the People failed to meet their burden of proving D'Amoun possessed or transported marijuana unlawfully, the jury "must find the defendant not guilty of these crimes." In addition, the jury was instructed that a single witness's testimony was sufficient to prove any fact.

Considering these instructions as a whole, we conclude there is no reasonable likelihood the jury understood them in a manner that violated D'Amoun's rights. (*People v. Smith, supra,* 168 Cal.App.4th at p. 13.) In the instructions, the jury was told the prosecution bore the burden of proving all elements of the offenses beyond a reasonable doubt; it was informed D'Amoun's actions were lawful if they found he had proved a valid CUA defense; and it was made aware that D'Amoun's testimony was sufficient to prove the facts underlying that defense. Nevertheless, the jury was entitled to disbelieve D'Amoun's testimony (*Dowl, supra,* 57 Cal.4th at p. 1092), and it appears that it did.

F.      *The Trial Court Did Not Err in Limiting the Jury's Consideration of D'Amoun's Medical Marijuana Recommendations.*

D'Amoun makes two related arguments regarding the physician recommendations found with him during the traffic stop. He first contends the trial court should have permitted the jury to consider them for the truth of the matter, i.e., that he possessed a physician's recommendation for medical marijuana. He further asserts the court should have instructed the jurors that a physician's oral recommendation was sufficient to find he was a qualified patient under the CUA. We disagree with both contentions.

The trial court received the documents D'Amoun claimed were physician recommendations into evidence. It instructed the jury they could be considered for the

16

purpose of corroborating D'Amoun's testimony that he had obtained them. In these circumstances, even if the trial court erred in refusing to permit the jury to consider the recommendations for their truth, any error was harmless. D'Amoun testified as to how he had obtained the recommendations, and they were admitted to corroborate that testimony. Moreover, there was no real dispute at trial that D'Amoun had medical problems sufficient to make him a qualified patient under the CUA. Along with the recommendations in D'Amoun's possession at the time of the traffic stop, the trial court admitted a recommendation D'Amoun obtained in July 2011, months after his arrest. The prosecutor also did not challenge D'Amoun's testimony regarding the recommendations in his cross-examination. In fact, in closing argument, the prosecutor largely conceded appellant had medical conditions serious enough to warrant a medical marijuana recommendation.

The trial court also did not err by not instructing the jury that a medical marijuana recommendation may be oral. D'Amoun directs us to nothing in the record showing he requested the instructions he now contends should have been given. And while D'Amoun testified to obtaining the recommendations admitted into evidence, he points to nothing in the record indicating he testified to receiving an *oral* recommendation for medical marijuana. The trial court was under no obligation to give a sua sponte instruction in the absence of substantial evidence supporting this aspect of his case. (See *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 775.) Furthermore, the trial court informed the jury that a qualified patient under the CUA is "a seriously ill patient for whom a physician has deemed marijuana an appropriate treatment, and for whom the physician has recommended the use of marijuana." Nothing in the instruction suggested to the jury the physician's recommendation must be written.

DISPOSITION

The judgment is affirmed.

17

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.