Filed 6/5/15  P. v. O'Conner CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060763 |
| v. | (Super.Ct.No. FVI1302859) |
| CHARLES EVLIN O'CONNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed with directions.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Charles Elvin O'Conner of first degree burglary (Pen. Code, § 459, count 1)[1] and receiving stolen property (§ 496, subd. (a), count 2). Defendant waived his right to a jury trial on the alleged prior convictions and admitted two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and four prior prison terms (§ 667.5, subd. (b)). The trial court sentenced defendant to a third strike indeterminate term of 25 years to life in state prison for count 1. For count 2, the court imposed and stayed a term of six years.

On appeal, defendant argues that: (1) his attorney rendered ineffective assistance of counsel by failing to object to an officer's multiple hearsay testimony; (2) there is insufficient evidence to support the burglary conviction; (3) the trial court abused its discretion by refusing to strike his prior strike convictions under section 1385; (4) his sentence of 25 years to life for the burglary conviction constitutes cruel and unusual punishment; and (5) the reporter's transcript of the sentencing hearing erroneously states that the court imposed four one-year enhancements for the four prior prison terms. For the reasons discussed *post*, we affirm the judgment, but direct the trial court to modify the minute order for the sentencing hearing and the abstract of judgment to reflect that the court stayed the four one-year enhancements.

---

[1] Unless stated otherwise, all further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The Prosecution's Case*

    a. *The items found in defendant's apartment*

Defendant and the victim were both residents of the same apartment complex in Barstow, California. A few days prior to September 5, 2013, the victim had reported to the police that several DVD's and a DVD player were missing from her apartment unit. On September 5, 2013, one of the complex's property managers inspected defendant's unit for floor damage and conducted a maintenance check of the unit's attic crawl space. As the property manager was about to enter the crawl space, defendant approached him and asked him not to say anything about what he saw in the attic and that he had "F'd up." Defendant showed the manager "track marks" on his forearm and told him that he had been on a "dope run" and had been "up for a while."

The manager entered the attic and noticed a bag of DVD's and a DVD player, which he recognized as the same player that the victim had reported stolen a few days previously.[2] The manager told defendant that he did not like what defendant was doing. He left defendant's unit and told both his wife and his supervisor about what he saw in the attic.

---

[2] At the time, the manager had heard that someone had taken DVD's and a DVD player from the victim, and he had previously seen the DVD player in her unit, so he knew what it looked like.

3

The manager and his wife then confronted defendant about the items in his attic and defendant explained that he had not taken them from the victim, but that "somebody else had given [them] to him." When the manager asked why he had not returned the items to the victim and had instead hidden them in his attic, defendant "got really quiet" and did not respond. The manager's wife chastised defendant because he had claimed to be the victim's friend. At her demand, defendant retrieved the DVD's and DVD player from his attic and gave them to the couple.

Defendant asked the supervisor not to call the police about the incident. He apologized and told her that he "had been on a binge," "slamming speed" for about two weeks and was "trying to get cleaned up." The supervisor did not oblige defendant's request—she called the police.

Defendant left the apartment complex before the police arrived. He was arrested later in the day, after he called the police and they tracked him to a different location.

b. *The victim's testimony*

The victim testified that at the time her property was stolen (late August 2013), she and her two children lived in an apartment unit in the Barstow complex. About every other day, she took her children to visit her mother-in-law so that they could eat because she did not have food at her apartment. When she returned to her unit on September 1, she noticed that one of her windows "seemed broken into. It was off the hinges . . . [or] off the rail—and the blinds were kind of messed up." Inside the unit, drawers and

4

cabinets were open and "things had been moved around."[3]  She noticed that several

CD's, DVD's, and her DVD player were missing, and she reported this to the police.

Sometime after September 5, she was called into the police station and she identified the

DVD's and DVD player as her missing property.

   c. *Defendant's statements regarding the stolen property*

    i. *Defendant's statement to the property manager*

  The arresting officer testified at trial that he interviewed the manager after arriving

at the scene on September 5.  The officer stated that he "remember[ed] [the manager]

saying that [defendant] told him, yeah, I took it."  On direct examination, the manager

testified that he recalled giving a statement to the officer on September 5, but he could

not remember if he told the officer that defendant had admitted taking the property from

the victim's apartment.  He did remember that defendant had asked him not to say

anything about what was in his attic, but he could not recall whether defendant had

admitted to taking the items.  He testified that "it happened a while ago, and my memory

is not the best in the world."

---

  **3**  The probation report contains information, not presented to the jury, which
directly conflicts with the victim's trial testimony that there was evidence of a forced
entry into her apartment. According to the report, the victim told the police that there was
no sign of forced entry at the time of the theft.  She reported that she suspected defendant
committed the burglary because he used to be a maintenance employee at the complex
and still had keys to her apartment.

## ii. Defendant's police interview

The prosecution played for the jury the recording of defendant's interview with the arresting officer on September 5. During the interview, defendant admitted that he had fled the apartment complex before the police arrived, but explained that he called the police about an hour after fleeing.

He told the arresting officer that he had been using speed and "lost track of everything [he] was doing . . . ." He then recounted the incident when the manager went into his attic. Before the manager entered the attic, defendant told him, "it's up there [in the attic]. I'm not sure if it's what I think it is." He asked the manager to give him time to go talk to a person called "Scrappy" in apartment 5 (the victim's apartment) to "straighten it out." Defendant explained to the officer that Scrappy lived in apartment 5 with the victim and that Scrappy had told him that "they were gone and never coming back."

During her trial testimony, the victim identified "Scrappy" as the father of her children. She said that he stayed in the apartment complex, but her testimony was unclear as to whether he lived in apartment 5 with her or in some other unit.

When the officer asked defendant if he had taken the property from apartment 5, he replied that he "got it from the guy that got it from apartment 5, knowing he got it from apartment 5." Defendant described the man who gave him the property as a younger, light-skinned Black male who was short, skinny, and had a "big afro."

6

Defendant did not know this man's name, but he called him "the kid." The kid told defendant that he got the property from apartment 5, that he was friends with the residents of that apartment, and that they were not coming back. The kid gave him the property a few days before September 5, at about 3:30 or 4:30 a.m., when defendant was sitting on the stairs at the complex, "tweaking around." Defendant told the officer that the kid comes and goes and, when he does not have a place to stay, "he'll come by and sit on the stairs and drink a beer." When the officer asked defendant whether the kid gave him anything else, he responded, "I was just interested in DVD's. It was my tweak of the night."

On cross-examination, the victim testified that her brother, whom she described as a short, skinny, light-skinned Black male with an afro, used to stay with her at her apartment, but that he was not spending time at the apartment complex at the time of the incident because he was in jail.

2. *The Defense's Case*

During closing argument, defense counsel admitted that defendant had a serious drug problem and was in possession of the stolen property, but he argued that the evidence failed to show that defendant burglarized the victim's apartment.

ANALYSIS

1. *Ineffective assistance of counsel*

Defendant argues that his attorney's failure to object to the officer's testimony (that defendant had told the property manager "yeah, I took it") constitutes ineffective assistance of counsel because the testimony was inadmissible double hearsay. He contends that he was prejudiced by counsel's failure, because had counsel objected, the jury would have been instructed to disregard what he characterizes as "the primary basis" for his burglary conviction.

To succeed on an ineffective assistance of counsel claim, the defendant must demonstrate that counsel's performance was deficient (i.e., it fell below an objective standard of reasonableness) and that the deficiency was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-695 (*Strickland*); *People v. Bolin* (1998) 18 Cal.4th 297, 333.) To establish prejudice, the defendant must show that there is a "reasonable probability" that, but for counsel's error, the result of the proceeding would have been more favorable to him. (*People v. Seaton* (2001) 26 Cal.4th 598, 666.)

The hearsay exception for party admissions applies to evidence of a statement "offered against the declarant in an action to which he is a party . . . ." (Evid. Code, § 1220.) The exception for prior inconsistent statements applies to evidence of a statement by a witness that is inconsistent with his or her trial testimony "and is offered in compliance with Section 770." (Evid. Code, § 1235; see *People v. Johnson* (1992) 3

8

Cal.4th 1183, 1219 ["A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770"].) Evidence Code section 770 provides that an inconsistent statement is admissible if the "witness was so examined while testifying as to give him an opportunity to explain or deny the statement" or "the witness has not been excused from giving further testimony in the action." Thus, where an officer testifies about a statement a witness had given him that relayed what the defendant had previously told the witness, and at trial the witness testifies inconsistently with that statement, both layers of the officer's testimony are admissible under the party admission and prior inconsistent statement exceptions, respectively. (*People v. Chism* (2014) 58 Cal.4th 1266, 1293-1295.)

Here, the first level of hearsay (defendant's statement that he "took" the property) falls under the party admission exception because it is a statement by defendant that was offered against him at trial.

The second layer of hearsay falls under the prior inconsistent statement exception because, at trial, the property manager (the declarant) testified that defendant denied taking the property. He further testified that defendant had told him that someone else had given him the property. Thus, the manager's statement to the officer that defendant had told him that he took the property was inconsistent with his trial testimony that defendant had told him that he did not steal the property from the victim.

9

Furthermore, the prosecution gave the manager the opportunity to explain or deny his prior inconsistent statement. (Evid. Code, §§ 770, 1235.) When the prosecutor asked the manager on direct examination whether defendant had admitted to him that he stole the property, he responded that he could not remember. He explained his statement by saying that, "my memory is not the best in the world," and had an imperfect recollection of his conversation with defendant and the officer. Additionally, because he was excused subject to recall, the manager could have been called to further explain his inconsistent statement after the officer testified.

We conclude that each layer of the officer's testimony is admissible, the defendant's "yeah, I took it" under the party admission exception, and the officer's testimony under the prior inconsistent statement exception. It follows that defendant's trial counsel's omission of an objection to the officer's testimony was not deficient and that no ineffective assistance occurred.

Defendant argues that because the property manager could not recall whether defendant had made the statement, this layer of hearsay cannot constitute a party admission. We reject this argument because there is no requirement that a witness must testify at trial that defendant made the statement in order for the party admission exception to apply, and defendant cites no authority for this argument. The fact that the manager could not remember whether defendant told him that he took the property is an issue of the manager's credibility, and it is for the jury to decide how much weight to

10

give his statement to the officer. (See *People v. Boyer* (2006) 38 Cal.4th 412, 480 ["Issues of witness credibility are for the jury"].)

We also reject defendant's argument that the statement was not a party admission because it was too vague and ambiguous to constitute a confession to either of the charges. Again, there is no requirement that a statement must be an actual confession or "admission" to the crimes charged for the party admission exception to apply. The exception applies to *any* statement by a party when offered against that party. (Evid. Code, § 1220; see, e.g., *Chism*, *supra*, 58 Cal.4th at pp. 1293-1295 [the statement constituting a party admission was not an admission by defendant that he had committed the robbery, but rather a statement that he had stopped by the target business before the robbery and had only seen one clerk].) Defendant's statement that he "took" the property falls squarely within the party admission exception.

Citing *People v. Johnson*, *supra*, 3 Cal.4th 1183, defendant argues that the property manager's statement cannot constitute a prior inconsistent statement because a witness's statement that he or she does not remember an event is not inconsistent with that witness's prior statement describing that event. This argument is unavailing because what the manager could not remember was *his statement to the officer*, not the event itself, i.e., his interaction with defendant before and after he found the property in his attic.

11

The manager's ability to remember whether he told the officer that defendant said he took the property is immaterial to the issue of whether his statement falls under the prior inconsistent statement exception. The "test for whether a witness's prior statement is inconsistent with prior testimony is whether the statement is inconsistent in effect rather than an express contradiction of terms." (See *Chism*, *supra*, 58 Cal.4th at p. 1295, citing *People v. Cowan* (2010) 50 Cal.4th 401, 462 [holding that the witness's statement that defendant had been casing the target business before the burglary was inconsistent with her trial testimony on the issue of when she first heard of the business: at trial she said she had not heard of it until the morning of the burglary, but her statement to the officer made it clear she had heard of it before then].) Here, the manager's trial testimony was inconsistent as to the issue of what defendant said after being caught with the victim's property: in the manager's statement to the officer, defendant said that he "took" the property, while according to the manager's trial testimony, defendant said that someone had given him the property. (See, e.g., *Cowan*, *supra*, 50 Cal.4th at p. 463 [holding that the witness's prior statement was "inconsistent as to what defendant purportedly said" because "in her statement to [the officer], [she] said defendant admitted killing an elderly couple he had found in a bedroom, while in her trial testimony [she] reported that defendant said only that he would cut [the witness's daughter's] throat"].) Thus, contrary to defendant's contention, the manager's statement to the officer was a

12

prior inconsistent statement as to his trial testimony about what defendant said after being caught with the stolen property in his attic.

2. *Sufficiency of the evidence*

In the alternative to his ineffective assistance of counsel claim, defendant argues that if the officer's double hearsay testimony is admissible, it is nevertheless insufficient evidence to support the burglary conviction.[4]  Defendant asserts that the testimony is the only evidence to support the burglary conviction and that it alone is too vague and ambiguous to constitute substantial evidence.  We disagree.

When considering a challenge to the sufficiency of evidence supporting a conviction, we must " 'review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' " (*People v. Jennings* (1991) 53 Cal.3d 334, 364.)  Even where the evidence of guilt is primarily circumstantial, the standard of appellate review is the same.  (*People v. Holt* (1997) 15 Cal.4th 619, 668 [" ' " 'If the circumstances reasonably justify the [jury's] findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment' " ' "].)  To succeed under a substantial evidence

_____

[4]  Defendant does not contest the sufficiency of the evidence to support the receiving stolen property conviction.

review, the defendant must establish that no rational jury could have concluded as it did—it does not matter that "the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime." (*People v. Hill* (1998) 17 Cal.4th 800, 849; see *People v. Hovarter* (2008) 44 Cal.4th 983, 1015 [" ' "An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise" ' "].)

In the context of a burglary, there is a "long-standing rule of law which allows a jury to infer guilt of a theft-related crime from the fact a defendant is in possession of recently stolen property when coupled with slight corroboration by other inculpatory circumstances which tend to show guilt." (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1173, citing *People v. McFarland* (1962) 58 Cal.2d 748, 754-758, cited with approval in *People v. Grimes* (2015) 60 Cal.4th 729, 770.) In *People v. McFarland*, our Supreme Court stated that "[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*McFarland*, *supra*, 58 Cal.2d at p. 754.) *McFarland* and another burglary case are instructive here.

In *McFarland*, the defendant was found in possession of property taken during four recent burglaries and was convicted of all four burglaries. (*McFarland*, *supra*, 58 Cal.2d at p. 758.) On appeal, the defendant challenged the sufficiency of the evidence

14

supporting the convictions. (*Id.* at p. 752.) The court found that the corroborating evidence of the burglaries was that, when questioned by the police about how he had acquired the property, defendant "either attempted explanations which the jury was entitled to reject as false in view of their vagueness and lack of important details, made statements which could be found to constitute admissions, or remained silent under circumstances of the type which could be found to permit use of his silence as reflecting consciousness of guilt." (*Id.* at p. 758.) The court held that this evidence, coupled with defendant's possession of the stolen property, was sufficient to support his convictions. (*Ibid.*)

In *People v. Mendoza* (2000) 24 Cal.4th 130, the defendant argued that evidence of his possession of property taken during two commercial burglaries was insufficient to support his burglary convictions. (*Id.* at p. 175.) The court concluded that evidence that the defendant was seen with the property the day of the burglaries and that he had told the police he had " 'been to Chinatown' "—the area where the burglarized businesses were located—was "adequate corroborating evidence" of his guilt such that, along with the fact that he was in possession of the recently stolen property upon arrest, a jury could reasonably infer that he committed the burglaries. (*Id.* at pp. 175-176.)

Here, as in *McFarland* and *Mendoza*, in addition to defendant's possession of recently stolen property, there is adequate corroborating evidence of guilt to support his burglary conviction. Specifically, the jury heard evidence that he hid the property in his

15

attic, told the property manager he had "F'd up" as the manager was about to enter his attic, admitted to the manager that he "took" the property, asked the manager's supervisor not to call the police, fled from the scene before the police arrived, and told the arresting officer that he was outside the apartment complex high on speed between 3:30 and 4:30 a.m. on the day he acquired the property.

Additionally, as was the case in *McFarland*, on the occasions when defendant was asked to explain how he had acquired the property and why he had kept it hidden, he either remained silent or gave an implausible explanation. (*McFarland*, *supra*, 58 Cal.2d at p. 754 ["[i]t has frequently been held that possession of recently stolen property together with a *false explanation* will support a conviction"]; see *People v. Green* (1995) 34 Cal.App.4th 165, 180-181 [" '[w]here recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating consciousness of guilt, an inference of guilt is permissible' "].) Specifically, the jury could have discredited defendant's explanation that he had acquired the property from "the kid" based on the testimony that he remained silent when the manager's wife asked him why he had not given the property back to the victim but had instead hidden it in his attic. The jury could also have discredited his explanation because the victim testified that her brother, who matched defendant's description of "the kid," was in jail during the time defendant said he gave him the property. The additional corroborating

16

evidence of guilt here is more than sufficient to constitute the slight evidence required to support a burglary conviction.

Defendant asserts that the only evidence to support the burglary conviction is his statement to the manager that he took the property, and he argues that he cannot be convicted of a crime based on his out-of-court statements alone. Defendant is incorrect that his statement to the manager is the only evidence to support the burglary conviction. As just discussed, the jury also heard testimony that defendant hid the property in his attic, told the manager that he had "F'd up," tried to convince the manager's supervisor not to call the police, fled the scene, and made statements during his police interview from which a jury could reasonably infer that he had the opportunity to commit the burglary. Even without the statement that he "took" the property, there was enough corroborating evidence (in addition to his possession of the property) for the jury to reasonably infer that defendant committed the burglary.

Citing cases that say evidence must raise more than a "suspicion" of guilt to constitute substantial evidence, defendant argues that the statement that he "took" the property was too vague and ambiguous to support his burglary conviction, especially in light of the fact that (with the exception of his possession of the property) there was no direct evidence to link him to the burglary, such as eyewitnesses, fingerprints, or DNA. Defendant asserts that the statement "omits critical facts" about where or from whom he "took" the property and that it could instead corroborate his explanation that "the kid"

17

gave it to him. Defendant's argument misunderstands our task in a substantial evidence review.

First, a conviction can be based primarily on circumstantial evidence, so long as that evidence constitutes substantial evidence. (*Holt*, *supra*, 15 Cal.4th at p. 668.) And, as we concluded *ante*, the circumstantial evidence of guilt here constitutes substantial evidence.

Second, it does not matter that defendant's ambiguous statement that he "took" the property supports a reasonable inference that he took it from "the kid," because the statement *also supports* a reasonable inference that he took it from the victim's apartment. When presented with two reasonable inferences that can be drawn from the evidence, we must uphold the inference that supports the conviction. " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*Holt*, *supra*, 15 Cal.4th at p. 668.) In other words, we assume that the jury assessed defendant's out-of-court statement and did not believe that he was referring to his interaction with "the kid" when he said he "took" the property. (*People v. Dowl*

(2013) 57 Cal.4th 1079, 1092 ["To be sure, defendant offered [exculpatory] explanations . . . but the jurors did not have to believe them"].) Defendant's statement need not clearly and unambiguously point to his guilt in order for the jury to consider it as a factor in assessing whether he committed burglary. We thus conclude that there was substantial evidence supporting the verdict, which evidence includes but is not limited to, his statement to the manger that he "took" the property.

3. *The trial court's refusal to strike defendant's prior strike convictions*

After the jury convicted defendant of first degree burglary and receiving stolen property, he waived his right to a jury trial on the alleged prior convictions. He admitted two prior strike convictions—a first degree burglary conviction from 1995 and a criminal threats conviction from 2012. He also admitted four prior prison term allegations. Before sentencing, defendant moved the court to strike one or more of his prior strike convictions under section 1385, pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

After hearing oral argument and discussing the briefs, probation report, and defendant's background and criminal history with counsel, the court stated its grounds for denying defendant's motion. It explained that while defense counsel's briefs were "compassionate and had a point," it nevertheless found defendant's past and current offenses were such that he was precisely the type of serious felon that the California

19

voters had in mind when enacting the three strikes law.[5]  The court found that defendant "[took] advantage of a position of trust or confidence to commit the crime. . . . these were neighbors . . . the defendant probably knew the victim was not at home, however, did not know when the victim would return with [her children]."  It also found that the property loss to the victim was significant because she "had nothing, not even food to eat."  Lastly, the court found that, according to the probation report, defendant had not shown any remorse for his crime.

Defendant contends that the trial court erred when it refused to strike one or both of his prior strike convictions under section 1385 because his current and prior felony convictions are not violent and are related to his drug addiction.

A trial court has the discretion to dismiss a prior strike conviction under section 1385 if the dismissal is in the furtherance of justice.  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.)  We review rulings on section 1385 motions for abuse of discretion and will uphold the decision unless it " 'falls outside the bounds of reason.' " (*People v. Williams* (1998) 17 Cal.4th 148, 152, 162.)  Our review is extremely deferential:  " '[w]here the record demonstrates that the trial court balanced the relevant

---

[5]  Specifically, the court stated:  "The DA highlighted the exact area that I'm concerned about.  When we look at the three strikes law, the voters just took another look at the three strikes law.  They modified it, and this is a burglary, and it falls right in with what they've just considered: That if a person commits another—a third strike, a serious or violent felony, that they fall within the three strikes law."

facts and reached an impartial decision in conformity with the spirit of the law,' " we must affirm the trial court's ruling, " 'even if we might have ruled differently in the first instance.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

Here, the trial court considered all of the facts and circumstances that would support dismissing one or both of defendant's prior strike convictions, but was unable to justify doing so based on defendant's current and prior offenses. After reading defendant's motion, the court found that there was not enough information in the motion to warrant its use of discretion to strike a prior conviction under section 1385. Instead of denying the motion on that ground, the court told defense counsel that he had "given a passionate response on behalf of [his] client" and asked counsel to prepare a supplemental motion that contained additional information on defendant's criminal history, such as whether his criminal involvement increased or decreased over time and which offenses were drug related.

At the sentencing hearing, the court stated that it had read the probation report and the parties' briefs (which included defendant's supplemental motion addressing the court's concerns) and had listened to the parties' arguments. The probation report detailed defendant's criminal history, which consists of 15 separate incidents, some of which involved more than one offense. In addition to his current burglary conviction, defendant was convicted of five previous felonies, some of which involved dangerous

21

weapons, threats of violence, and burglary.[6] He was also convicted of 10 misdemeanors, most of which involved narcotics and some of which involved resisting and obstructing a peace officer (§ 148, subd. (a)) and infliction of corporal injury (§ 273.5).

Before giving its ruling, the court stated, "Because I heard the trial in this matter, and I heard the facts, I really wanted to give due consideration to whether or not I'll exercise my discretion regarding striking a strike." The court then stated its findings, detailed *ante*, which are thorough and indicate that the court took time to fully consider defendant's criminal history and whether he fits within the spirit of the three strikes law. We therefore hold that the court reached a reasoned and impartial decision and did not abuse its discretion in refusing to dismiss any of defendant's prior strike convictions.

Defendant's argument that his crimes are nonviolent and related to his drug addiction does not change our conclusion. The three strikes law does not focus solely on violent felonies, it also applies to serious felonies, which defendant has a history of committing. (See *Romero*, *supra*, 13 Cal.4th at p. 505 ["In summary, [the three strikes law has] this effect: When a defendant is convicted of a felony, and it is pleaded and proved that he has committed one or more prior felonies defined as 'violent' *or* 'serious,' sentencing proceeds under the Three Strikes law "] italics added.)

---

**6** Defendant's five previous felony convictions are: burglary conviction in 1995 (§§ 459, 460); threatening a witness conviction in 1997 (§ 140); possession/manufacture of dangerous weapon conviction in 2006 (§ 12020, subd. (a)(1)); criminal threats conviction in 2012 (§ 422); and attempted burglary conviction in 2012 (§§ 666, 459).

22

Moreover, the primary purpose of the three strikes law is to ensure longer sentences for recidivists. (*Romero*, *supra*, 13 Cal.4th at p. 528 ["Plainly the Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders"].) Assuming that defendant's crimes are the result of his drug addiction, his criminal history indicates that he is likely to continue to reoffend as a result of, or to support, his addiction. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 319-322 [reversing trial court's dismissal of a prior strike conviction, stating that "[a]lthough 'drug use appears to be an underlying factor in [defendant's] criminal behavior, and in fact may be the root cause thereof,' the record is barren of any attempts by [defendant] to 'root out' such destructive drug dependency" and that his criminal history demonstrated he had "failed to learn anything from the experience"].) The trial court reviewed defendant's history of repeated criminal activity and drug addiction and found him to be within the spirit of the three strikes law. This decision lay well within the bounds of its discretion under section 1385, and we uphold it.

4. *Cruel and unusual punishment*

Defendant contends that the sentence of 25 years to life for the burglary conviction constitutes cruel and unusual punishment in violation of the federal and state constitutions.

A punishment violates the federal Constitution if it is grossly disproportionate to the severity of the crime. (U.S. Const., 8th Amend.; *Graham v. Florida* (2010) 560 U.S.

48, 59-60.) A punishment violates the California Constitution if " 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478, abrogated by statute on a different ground as explained in *People v. Chun* (2009) 45 Cal.4th 1172, 1186.) In determining whether a sentence is cruel and unusual, California courts: (1) review the nature of the offense and the offender; (2) measure the punishment at issue against punishments prescribed for more serious crimes in the jurisdiction; and (3) measure the punishment at issue against punishments prescribed for the same crime in other jurisdictions. (*In re Lynch* (1972) 8 Cal.3d 410, 425-427, superseded by statute on another ground as stated in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51.) A defendant "must overcome a 'considerable burden' to show the sentence is disproportionate to his level of culpability." (*People v. Em* (2009) 171 Cal.App.4th 964, 972, citing *People v. Wingo* (1975) 14 Cal.3d 169, 174.) Consequently, " '[f]indings of disproportionality have occurred with exquisite rarity in the case law.' " (*Em*, at p. 972.)

Regarding the first step, defendant points out that his current offense "did not involve actual violence or even a credible threat of violence." This argument ignores the fact that defendant's current offense was a serious felony[7] and that three strikes law

---

[7] Defendant admits that his current offense and prior strike convictions are for serious felonies.

applies to serious felonies.  (*Romero*, *supra*, 13 Cal.4th at p. 505.)  Defendant was the victim's friend and neighbor, and by committing the current offense he violated a position of trust.  The seriousness of this offense is compounded by the fact that he did not know when the victim and her children would return to the apartment—they frequently traveled back and forth between the apartment and her mother-in-law's residence—and by the fact that the victim was so poor that she did not even have enough money to buy food.

Defendant's sentence is not based solely on his current offense, but also on his past offenses and his recidivism.  Defendant's criminal record contains prior felony convictions for burglary, attempted burglary, threatening a witness, possession of a dangerous weapon, and criminal threats, spanning from 1995 to the present.  It also contains numerous convictions involving narcotics, and he admits that he has had a serious and long-standing drug addiction.  Defendant's criminal history compels the conclusion that he is a repeat offender who is likely to continue to offend because he has proved by his criminal history that he is " 'unable to bring his conduct within the social norms prescribed by the criminal law of the State.' "  (*Ewing v. California* (2003) 538 U.S. 11, 21 [United States Supreme Court holding that California's three strikes law is a constitutional punishment for a repeat offender, even when the defendant's offenses are only theft-related].)

The fact that the current offense involved an item of little monetary value does not affect our conclusion. As the court found, defendant violated a position of trust by stealing from a neighbor who did not have enough money to provide food for her family and who could have returned home during the commission of the burglary.

The second step in the cruel and unusual punishment analysis, measuring the punishment at issue against punishments prescribed for more serious crimes, is inapplicable to sentencing under the three strikes law. (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.) This is because it would be " 'illogical' " to measure the punishment for defendant's offense, which includes defendant's recidivism, against the punishment of those who have committed more serious crimes but are not career criminals and are not being sentenced under a recidivist statute. (*Ibid.*)

Regarding the third step, a comparison of California's three strikes law with recidivist statutes in other states reveals that many other states impose life imprisonment on habitual criminals, and that some states impose life imprisonment without possibility of parole. (*People v. Cline*, *supra*, 60 Cal.App.4th at p. 1338.) Thus, California's punishment of repeat offenders is similar to that of other jurisdictions.

Based on the above, we conclude that the 25-year-to-life sentence imposed in this case is not cruel and unusual punishment.

5. *The four one-year enhancements*

There is some ambiguity in the record with regard to the outcome of the enhancements for defendant's four prior prison terms under section 667.5, subdivision (b). (See § 667.5, subd. (b) [requiring court to "impose a one-year term for each prior separate prison term or county jail term" where the current offense is "any felony for which a prison sentence . . . under subdivision (h) of Section 1170 is imposed"].) Before the court's ruling on defendant's 1385 motion, the prosecutor informed the court that "25 to life was sufficient" punishment for defendant and that, if the court refused to strike defendant's prior strike convictions, he would ask the court to strike the four prior prison terms.

During the sentencing portion of the hearing, the court imposed a third-strike, 25-year-to-life term for count 1 and imposed and stayed a six-year term for count 2. With regard to the enhancements, the court stated that it would "stay the 677.5(b) priors." However, when the court summarized defendant's sentence, it stated, "So the defendant is sentenced to the State Prison for a total of *ten years* with six years stayed, plus 25 years to life." The minute order from the sentencing hearing states that the four prison priors were stricken,[8] and the abstract of judgment contains no reference to them or to four one-

_____

[8] The minute order dated February 21, 2014, states: "Court orders Prior # 01 02 03 04 stricken."

27

year enhancements. Our issue on appeal is to determine what the trial court meant when it referred to a 10-year sentence, six years of which are to be stayed, and to determine the court's ruling on the enhancements.

Both parties agree that the court's reference to a 10-year sentence was an inadvertent misstatement. In his opening brief, defendant argues that the court's intention, as reflected in its statement immediately preceding its reference to the 10-year sentence, was to stay the four one-year enhancements. The People agree that the court intended to stay the enhancements. In his reply brief, defendant argues for the first time that the court intended to strike the enhancements and identifies, also for the first time, the portion of the minute order that states, "Court orders Prior # 01 02 03 04 stricken." [9] Defendant asks that we remand this case to the trial court "to properly determine whether the court intended to strike or stay the sentences on the prior prison terms." Where a defendant raises an argument for the first time on reply, the People are deprived of the opportunity to respond (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765); however, a response from the People is not necessary here because defendant's argument does not change our conclusion that the court intended to stay, not strike, the enhancements.

---

[9] Defendant makes no mention of this portion of the minute order striking the four prison priors in his opening brief; rather, he argues that the minute order is silent on the issue.

"In a criminal case, it is the *oral pronouncement of sentence* that constitutes the judgment." (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324, citing *People v. Mesa* (1975) 14 Cal.3d 466, 471.) Thus, where there is a discrepancy between the transcript of the sentencing hearing and the minute order or the abstract of judgment, "[t]he record of the oral pronouncement of the court controls." (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Such discrepancies in minute orders or abstracts of judgment "are subject to correction at any time, and should be corrected by a reviewing court when detected on appeal." (*Scott*, at p. 1324, citing *People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

Here, the court made its intention regarding the enhancements clear when it stated, "I will stay the 677.5(b) priors." Thus, the reference to a 10-year sentence that came immediately after this statement was either an inadvertent mistake or a change in the court's ruling. Specifically, "ten years" would constitute a change in the court's ruling to stay the enhancements because the ten years presumably consists of the six-year term (which the court explicitly states is stayed) plus the four one-year enhancements (which the court does not mention staying). It would be unlikely for the court to change its ruling so suddenly—to reinstate enhancements it had just ruled it was staying—without commenting on its reason for the change. We find it much more likely (as do both parties) that the court simply misspoke when it stated that defendant was sentenced to state prison "for a total of ten years with six years stayed."

Based on the court's clear statement that it intended to "stay the 677.5(b) priors," we conclude that the court's oral pronouncement was to stay the four one-year enhancements. Because a court's oral pronouncement controls over the contents of a minute order, we reject defendant's argument that the minute order indicates that the court intended to strike the enhancements. (See, e.g., *Scott*, *supra*, 203 Cal.App.4th at p. 1324.) The minute order and abstract of judgment should therefore be modified to reflect that the court stayed the enhancements.

## DISPOSITION

The judgment is affirmed. The trial court is directed to modify the minute order dated February 21, 2014, and the abstract of judgment to reflect the imposition and stay of the four one-year enhancements for defendant's four prior prison terms under section 667.5, subdivision (b). The trial court is directed to deliver a certified copy of the modified minute order and abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

CODRINGTON
J.

30